## THE UNION REFRIGERATOR TRANSIT COMPANY, A CORPORATION, APPELLANT *v.* STEPHEN H. LYNCH, TREASURER OF SALT LAKE COUNTY AND COLLECTOR OF TAXES, RESPONDENT.

*Taxation—Cars Owned by Foreign Corporation—Situs.*

Railway cars, owned by a Kentucky corporation having no place of business in this state, leased to various shippers, but coming into or passing through and doing business in this state, have for the purposes of taxation, a *situs* in this state.

*Constitutional and Legislative Authority for Taxation—Sec. 2, Art. 13, Const.—Secs. 1, 55 and 56, Chap. 129, S. L. U. 1896—Inter-State Commerce—Regulation of.*

Sec. 2, Art. 13 of the State constitution and Secs. 1, 55 and 56 of an act of the legislature, approved April 5, 1896, Session Laws, 1896, p. 423, authorize a tax upon such property found within the jurisdiction of this State; and, although the cars may have been employed in inter-state commerce, the tax is not a regulation of inter-state commerce and is not prohibited by the constitution or laws of the United States.

*Interpretation of Statutes—Punctuation.*

The true meaning and intent of a statute is to be ascertained

from the whole purview, and to ascertain such meaning and intent the court will punctuate or disregard punctuation as may be necessary.

(Decided December 10, 1898.)

Appeal from the District Court Salt Lake County, Hon. A. N. Cherry, *Judge.*

Action by the Union Refrigerator Transit Company against Stephen H. Lynch, Treasurer of Salt Lake County and Collector of Taxes, to recover a certain sum of money paid by plaintiff as a tax, under protest, plaintiff claiming that the tax was illegal.

Defendant interposed a demurrer to the complaint of plaintiff and the same being sustained and the plaintiff electing not to amend but to stand on its complaint, judgment of dismissal with costs against plaintiff was entered. From that judgment plaintiff appeals. *Affirmed.*

*Parley L. Williams, Esq.,* for appellant.

Appellant relies for the reversal herein upon the error of the District Court in sustaining the said demurrer and in entering the final judgment of dismissal of the complaint.

Appellant contends that the State of Utah had no power to tax its property as it did, First: Because said cars being only *transiently* within said State from time to time, had no such *situs* within said State as is necessary to give it jurisdiction over them for the purpose of taxation. Second: Because such taxation would amount to a regulation of inter-state commerce and thus be repugnant to the exclusive power vested in Congress by the Consti_ tution to regulate such commerce. Third: Because even

if taxable, no appropriate provision of law has been enacted authorizing such assessment or taxation.

The general rule is that personal property follows the person of its owner and is taxable only at the owner's domicile. To acquire a *situs* the property must be located, that is, commingled with the general mass of property in the State. From the foundation of the government it has been held wherever the question has arisen, that property merely in transit through a state was not taxable therein. *Crandall* v. *State of Nevada*, 6 Wall. 35.

So it was held in the case of *Moore* v. *Wilson*, 10 N. H. 452, that a poll tax cannot be assessed against a person while passing through a state. See also *Robinson* v. *Longley*, 18 Nev. 71.

That a state cannot tax property not being located or having a *situs* within its limits was held in *McCullough* v. *Maryland*, 4 Wheat. 429; State Freight Tax, 15 Wall. 232 to 281, *Col.* v. *Errol*, 116 U. S. 517; *Conn. River L. Co.* v. *Columbia*, 62 N. H. 286.

Among the cases maintaining the same principle applicable to railroad cars in transit, see *Pullman* v. *Nolan*, 22 Fed. 276; *Pickard* v. *Pullman*, 17 U. S. 34; *Central Railroad Co.* v. *State Board*, 49 N. J. Law, 1; *Bain* v. *Railroad*, 105 N. C. 363.

The tax imposed is a regulation of inter-state commerce. *Philadelphia Steamship Co.* v. *Pennsylvania*, 122 U. S. 326; *Erie Ry. Co.* v. *The State*, 31 N. J. Law, 531; *Central Ry. Co.* v. *State Board*, 49 N. J. Law, 20–22.

No appropriate provision of law has been enacted authorizing a tax upon this property. The laws bearing upon this question are contained in the constitution Art. 13, Sec. 2, and the statute under which the tax was levied was the revenue law of 1896. Session Laws 1896, p. 423.

Section 55 of the revenue law above referred to requires the proper officer "of any corporation, and each person or association of persons owning or operating any railroad, street railway car, telegraph or telephone line or railway depot in this State, to make a sworn statement showing in detail its property, real, personal or otherwise, in the State, including a statement of mileage in each county as valued, on the first Monday in March of the same year."

The 56th section authorizes the state board of equalization to "assess all property and franchises of railroads, car, street railway, railway depot, telephone or telegraph companies."

It will be observed that the punctuation in these two sections differs in specifying the property to be returned by the company or owner by Sec. 55 and that to be assessed as provided in Sec. 56. In the first of the two sections no comma is placed after the words, "street railway," while it is so punctuated in the following section and at the same time there is a different arrangement of words.

The real meaning of the legislature, it is submitted, was to treat the owners of car lines the same as the owners of railroads, street railways, telegraphs or telephones, and where it uses the word "car" in each section, it means car lines or car companies having, owning, operating and using such car lines within the state, and applied only to such property of that class as "*abides*" and has its *situs* within the state. In other words the legislature had only in mind and used language appropriate, for the taxation of car lines located and being operated in this state, the same as railroad lines, telephone, or telegraph lines located within and operating in the state.

Our contention is supported by the case of *Marye* v. *Baltimore & Ohio R. R.*, 127 U. S. 117.

*Waldemar Van Cott, Esq., Graham F. Putnam, Esq.,* and *Ray Van Cott, Esq.,* for respondents.

The appellants in this case complain that the tax levied and collected herein is unconstitutional because opposed to the inter-state commerce clause of the federal constitution. In this counsel for appellant seriously errs, in not distinguishing between a tax on commerce and a tax on property employed in commerce.

This question has been decided by the Supreme Court of the United States so that any extended review of the authorities is unnecessary. *Adams Express Co.* v. *Ohio,* 165 U S 194.

Affirmed in 166 U. S. 185. See also *Pullman Palace Car Co.* v *Pennsylvania,* 141 U. S. 18.

The identical questions involved in this case have been decided by the Supreme Court of Colorado in *Hall* v. *American Refrigerator Transit Co.,* 51 Pac. 421.

The tax imposed is not a regulation of inter-state commerce. *Philadelphia Co.* v. *Pennsylvania,* 122 U. S. 326; *Pullman Palace Car Co.* v *Pennsylvania,* 141 U. S 25; *Hall* v. *American Refrigerator Transit Co.,* 51 Pac. 421.

The legislative language is adequate to impose a tax on the part of appellant's property within the State of Utah. Constitution Art. 13, Sec. 2. Laws of 1896, page 423, Sec. 1, pages 439–440, Secs. 55, 56.

Very little attention is ever given to punctuation in interpreting the law. Sutherland on Statutory Construction, Sec. 232. *Hall* v. *American, etc., Co.,* 51 Pac. 421.

### STATEMENT OF FACTS.

This action was brought by the Union Refrigerator Transit Company against the collector of taxes for Salt Lake County, to recover a certain sum of money paid

him as tax under protest, the company claiming that the tax was illegal. It was alleged in the complaint that the plaintiff is a corporation organized under the laws of the State of Kentucky, having its principal office and place of business in the City of Louisville, in that State, and engaged exclusively in the business of furnishing to shippers, refrigerator cars for the transportation of perishable freight over various lines of railroads throughout the United States; that its cars have not been, during any of the time in which it has been engaged in business, let, leased, run or furnished under contract with any railroad company, or carrier of freight, or run on any particular lines of railroad, or confined to any particular routes or trains, or at any specified or agreed times, but have been run indiscriminately over the lines of railroads which the consignors, of freight shipped in them, chose to route them in shipping; that the business in which the cars were engaged was exclusively interstate commerce; that the plaintiff has not, and had not at any time, an office or place of business within the State of Utah; that all the freight transported in the cars into and through this State was transported from points in another State, within the United States, to points within this State, or *vice versa*, or between points, none of which were within the State of Utah, the cars merely passing through this State; that the cars were in this State at no regular intervals and in no regular number, and, when within this State, were only within it in transit, except to load and unload freight shipped from within out of the State, or coming into the State from places without the same, or in the transportation of freight entirely through or across it; that at all such times said cars were only transiently present for the said purposes, having at no time had a *situs* within this State; that the plaintiff has not at any time had other property of any description located within the

state of Utah; that notwithstanding these facts the Board
of Equalization of the State of Utah, for the year 1897,
assessed and valued ten cars the property of the plaintiff,
for taxation, the aggregate assessment thereof being
$2,600.00, and also apportioned said assessment between
the several counties in this State through which the lines
of railroad pass, and through which the cars might be
transported; that the board apportioned to Salt Lake
county, of the said aggregate assessment, the sum of
$210.00; that taxes were levied upon the assessed valua-
tion of the property, so apportioned to said Salt Lake
county, aggregating $5.76; that said tax is illegal and
void; that to avoid the seizure and sale of its property,
and to prevent incurring the penalties provided by law,
the plaintiff, on the 18th day of November, 1897, paid
said taxes under protest to defendant, as treasurer of said
county and collector of taxes; and that at the time of pay-
ment notice was given defendant of the plaintiff's claim
that the taxes were illegal, and that suit would be brought
to recover the same.

To this complaint a general demurrer was interposed,
which, upon hearing, was sustained by the court, and, the
plaintiff electing to stand upon its complaint, and refusing
to amend, the action was dismissed. This appeal is from
the judgment of dismissal.

After stating the case, BARTCH, J., delivered the opinion
of the court.

The appellant has challenged the power of the State to
levey and collect the tax in question, in the first instance,
upon the ground that the cars, being only transiently
within the State from time to time, acquired no such *situs*
within its borders, as to give it jurisdiction over them for
the purposes of taxation.

The power to tax is founded in necessity.   It is an incident of sovereignty, .possessed by the government, even though not expressly conferred by the people.   A tax is a contribution imposed by the government upon the people for the service of the state.   In return for such contribution, the state affords protection to life, liberty, and property, and this is essential to civilization and the very existence of the state.   The assessment and collection of taxes, therefore, are among the highest acts of the supreme power of the government.   The power of taxation is a legislative power, and no principle of law is better settled than that such power extends to all property, whether real or personal, tangible or intangible, within the borders of the state, not exempt under the Constitution and laws of the United States; and, except so far as the comity of the State permits, such property, for the purposes of taxation, is not affected by the laws of any other state.   Therefore, in order that property may be subjected to taxation, it is not a requisite that the owner should reside in the state, and this is true as to personal property, tangible or intangible, as well as to real.   Regardless of where the owner's domicile may be, it is the duty of the state to furnish protection to his property, and in turn the property must bear a just proportion of the burdens of the government.

The ancient rule indicated by the maxim *mobilia sequuntur personam*, that personal property is to be regarded as subject to the lex domicilii, has never been of universal application in this country, and in modern times has seldom interfered with the power to levy taxes upon such property.   The origin of that doctrine dates from an ancient time when jewels and gold principally constituted the movable property, and that could be taken by the owner from one place to another, but such has not been the case in

18 Utah—25

recent times, since, in the continued progress of the world, the accumulated wealth consists in large proportions of personal property, including not only jewels and gold, but also a great variety of other personal property, much of which is intangible, as franchises, privileges, etc., but nevertheless property representing value, and none of which is immediately connected with the person of the owner, yet over all of which it is incumbent upon government to extend its protection. The constantly increasing variety of such property, perceptible and imperceptible, tangible and intangible, has caused the ancient rule, expressed in the maxim, to yield more and more to the lex situs, and while it is true that for many purposes personal property is subject to the law of the place of the owner's domicile, still the law is well settled that for the purposes of taxation, and for other purposes, such property has its actual situs where it has been brought and used by its owner, and is subject to the law of that place. Hence, if the owner reside in one State and his movables are taken to another, and used there, they may become the subject of taxation in the latter State. Such property may be separated from its owner, and he may be taxed because of it, at the place where it is found, although not the place of his domicile.

In his commentaries on the Conflict of Laws, section 550, Mr. Justice Story, discussing jurisdiction as regards property, observed that, "Although movables are for many purposes to be deemed to have no situs, except that of the domicile of the owner, yet this being but a legal fiction, it yields whenever it is necessary for the purpose of justice that the actual situs of the thing should be examined. A nation within whose territory any personal property is actually situate has an entire dominion over it while therein, in point of sovereignty and jurisdiction, as

it has over immovable property situate there." *Pullman Car Co.* v. *Pennsylvania,* 141 U. S. 18.

The power to tax being inherent in the government, the State unquestionably has the right, through the legislature, to exercise that power over all property which may be found within its borders, whether brought there temporarily or otherwise, for the purposes of business, or for trade, or convenience, unless restrained or limited by constitutional provision, and courts cannot control the exercise of such power, except when it conflicts with constitutional limitations.

In *McCulloch* v. *State of Maryland,* 4 Wheat. 316, 429, Mr. Chief Justice Marshall, delivering the opinion of the court, after defining the nature and extent of the original right of taxation which remains with the States, said: "It may be objected to this definition, that the power of taxation is not confined to the people and property of a state. It may be exercised upon every object brought within its jurisdiction. This is true. But to what source do we trace this right? It is obvious that it is an incident of sovereignty and is coextensive with that to which it is an incident. All subjects over which the sovereign power of a state extends, are objects of taxation; but those over which it does not extend, are, upon the soundest principles exempt from taxation. This proposition may almost be pronounced self-evident. The sovereignty of a state extends to everything which exists by its own authority, or is introduced by its permission."

So in *Transportation Co.* v. *Wheeling,* 99 U. S. 273, Mr. Justice Clifford, delivering the opinion of the court, after citing authorities to the proposition that the power to tax for the support of the State government exists in the State independently of the national government; and that it may well be assumed that where there is no cession of

contradictory or inconsistent jurisdiction in the United States, nor any restraining compact in the constitution, the power in the states to tax for the support of the State authority, reaches all the property within the State which is not properly regarded as the instruments or means of the Federal Government, observed: ''Beyond question these authorities show that all subjects over which the sovereign power of a State extends are objects of taxation, the rule being that the sovereignty of a State extends to everything which exists by its own authority or is introduced by its permission, except those means which are employed by congress to carry into execution the powers given by the people to the Federal Government, whose laws, made in pursuance of the constitution, are supreme.''

From the foregoing considerations it is clear that the power of this State to tax the personal property in question herein is not affected by the fact that the Union Refrigerator Transit Company is a creature of another State in which it has its domicile, nor because of the fact that the cars were only transiently in this State, or were furnished for transportation of perishable freight over various lines of railroad throughout the United States. It is, therefore, evident that this State has power to tax such cars when brought within its territory or jurisdiction and are found there, but whether by apt legislation, it has exercised its authority in this case is a question to be hereinafter determined.

Counsel for the appellant has cited, numerous cases to support the contention respecting the question of situs above considered.

*Crandall* v. *State of Nevada*, 6 Wall. 35. The first case cited was one where a statute providing for the levy of a ''tax of $1 upon every person leaving the State by railroad, stage coach, or other vehicle'' engaged in the

business of transporting passengers, was held unconstitutional and void.

*Moore* v. *Wilkins*, 10 N. H. 452, simply decides that an individual is to be taxed in the place where he is residing, and not in another town where he has gone for a temporary purpose only, both places being in the same State.

So, in *Robinson* v. *Longley*, 18 Nev. 71, it was held that a travelling circus and menagerie, owned by a non-resident and brought into the State, to be exhibited at various places, and then taken into and through other States for the same purpose, was not subject to taxation in the State of Nevada.

*McCulloch* v. *Maryland*. 4 Wheat. 316, was a case where a tax imposed by the State of Maryland on a branch of a bank of the United States, located in that State, was held unconstitutional, but clearly that case does not militate against the principles hereinbefore considered, the tax imposed being on property over which the United States had jurisdiction.

In the case of the State Freight Tax, 15 Wall. 232, it was held that the statute of a State, imposing a tax upon freight taken up within the State and carried out of it, or taken up without the State and brought within it, is repugnant to the Constitution of the United States, a tax upon freight, transported from State to State, being a regulation of commerce among the States.

In *Coe* v. *Errol*, 116 U. S. 517, it was decided that goods on their way through a State from a place outside thereof to another place outside thereof, are subjects of interstate or foreign commerce, and are not taxable by the State through which they pass.

In *Conn. River L. Co.* v. *Columbia*, 62 N. H. 286, it was held that logs temporarily in a river awaiting trans-

portation from one State to another were exempt from State taxation.

*Pullman Southern Car Co.* v. *Nolan*, 22 Fed. Rep. 276, is a case where the State of Tennessee attempted by statute to impose a "privilege tax" on sleeping cars in the transportation of interstate passengers, and the court held that the cars had no situs in that State for such purpose. This was not a tax based on value, but was an arbitrary fixed charge on the business without regard to the articles employed.

Likewise as to *Pickard* v. *Pullman Southern Co.*, 117 U. S. 34, which holds the same act of Tennessee void so far as it applies to the interstate transportation of passengers.

Reliance is also placed by the appellant to sustain the proposition that the cars in question had no *situs* in this State for the purpose of taxation, upon *Morgan* v. *Parham*, 16 Wall. 471; *Hayes* v. *Pacific Mail Steamship Co.*, 17 How. 596, and *St. Louis* v. *The Ferry Co.*, 11 Wall. 423, but those are cases where ships or vessels were engaged in inter-state or foreign commerce upon the high seas, and were registered at their home ports under the laws of the United States, at the owner's domicile, and were therefore held not to be subjects of taxation in another state at whose ports they temporarily touched for the purpose of delivering or receiving passengers or freight. The distinction between ships and vessels, having their *situs* fixed by Congress, sailing on the high seas, only temporarily and incidentally touching ports, and cars and other vehicles not having their *situs* so fixed, and used for transportation on land only, is marked and obvious.

Mr. Justice Bradley, in *Railroad Co.* v. *Maryland*, 21 Wall. 456, speaking of transportation on land and

water, observed: ''Commerce on land between the different states is so strikingly dissimilar, in many respects, from commerce on water, that it is often difficult to regard them in the same aspect in reference to the respective constitutional powers and duties of the State and federal governments. No doubt commerce by water was principally in the minds of those who framed and adopted the constitution, although both its language and spirit embrace commerce by land as well. Maritime transportation requires no artificial roadway. Nature has prepared to hand that portion of the instrumentality employed. The navigable waters of the earth are recognized public highways of trade and commerce. No franchise is needed to enable the navigator to use them. Again, the vehicles of commerce by water being instruments of intercommunication with other nations, the regulation of them is assumed by the national legislature. So that State interference with transportation by water, and especially by sea, is at once clearly marked and distinctly discernible. But it is different with transportation by land. This, when the constitution was adopted, was entirely performed on common roads, and in vehicles. drawn by animal power. No one at that day imagined that the roads and bridges of the country (except when the latter crossed navigable streams) were not entirely subject, both as to their construction, repair and management, to State regulation and control.''

So, it will be noticed, upon examination, that the case at bar may be distinguished from each of the cases cited by the appellant, on the question of *situs*, and thus far considered. Each one presented different facts and different questions, and none of them can be regarded as authority here.

There has been cited, however, on this same point, the

cases of the *Central R. R. Co.* v. *State Board of Assessors*, 49 N. J. L. 1, and *Bain* v. *Railroad*, 105 N. C. 363, and these, it must be admitted, support the contention of the appellant, and some of the cases above distinguished are therein cited as authority. We do not think those decisions are in harmony with the weight of authority, and they are clearly opposed to the latest decisions of the Supreme Court of the United States upon this subject, as appears from the cases of the *Pullman Car Co.*, v. *Pennsylvania*, 141 U. S. 18; *Adams Express Co.* v. *Ohio*, 165 U. S. 194, and *Adams Express Co.* v. *Ohio*, 166 U. S. 185.

We conclude that the cars in question had, for the purposes of taxation, a *situs* in this State.

Nor do we think the tax imposed is a regulation of interstate commerce. It is not a tax on persons or freight in transit through this State to other States or countries, nor on the right of transit or transportation; nor is it a license or privilege tax, or tax on business or occupation, or on property of the United States located in this State. It is essentially a tax on property found and used in this State, and valued, for the purpose of taxation, like other personal property within the jurisdiction of the State, and, although the cars may have been employed in interstate commerce, the State is not prohibited by the Constitution or laws of the United States, from taxing them as other personal property within its jurisdiction. This has been so declared by the Supreme Court of the United States.

In *Pullman's Car Co.* v. *Pennsylvania, supra,* where the question was whether Pullman cars could be taxed in Pennsylvania, the corporation being a creature of the State of Illinois, having its home there, itself not operating any railroad but merely furnishing cars to the various railroad lines, which cars were simply run into Pennsyl-

vania and out again in the ordinary course of business.
Mr. Justice Gray, delivering the opinion of the court,
after stating that, for the purposes of taxation, it had been
repeatedly affirmed by that court, that personal property
might be separated from its owner, and that he might be
taxed, on its account, at the place where it was, although
not in the place of his own domicile, and even if he were
not a resident of the State imposing the tax, said : "It is
equally well settled that there is nothing in the Constitu-
tion which prevents a state from taxing personal property,
employed in interstate or foreign commerce, like other
personal property within its jurisdiction."

Again he observed : "The cars of this company within
the State of Pennsylvania are employed in interstate com-
merce; but their being so employed does not exempt them
from taxation by the State; and the State has not taxed
them because of their being so employed, but because [of
their being within its territory and jurisdiction. The cars
were continuously and permanently employed in going to
and fro upon certain routes of travel. If they had never
passed beyond the limits of Pennsylvania, it could not be
doubted that the State could tax them, like other property
within its borders, notwithstanding they were employed
in interstate commerce. The fact that, instead of stop-
ping at the State boundary, they cross that boundary in
going out and coming back, cannot effect the power of the
State to levy a tax upon them. The State, having the
right, for the purposes of taxation, to tax any personal
property found within its jurisdiction, without regard to
the place of the owner's domicile, could tax the specific
cars which at a given moment were within its borders.
The route over which the cars travel extending beyond the
limits of the State, particular cars may not remain in the
State; but the company has at all times substantially the

same number of cars within the State, and continuously and constantly uses there a portion of its property."

In *Adams Express Co.* v. *Ohio*, 165 U. S. 194, Mr. Chief Justice Fuller, speaking for the court, said: "Although the transportation of the subjects of interstate commerce, or the receipts received therefrom, or the occupation or business of carrying it on, cannot be directly subjected to state taxation, yet property belonging to corporations or companies engaged in such commerce may be; and whatever the particular form of the exaction, if it is essentially only property taxation, it will not be considered as falling within the inhibition of the constitution. Corporations and companies engaged in interstate commerce should bear their proper proportion of the burden of the governments under whose protection they conduct their operations, and taxation on property, collectible by the ordinary means, does not effect interstate commerce otherwise than incidentally, as all business is affected by the necessity of contributing to the support of government."

So, in *Adams Express Co.* v. *Ohio*, 166 U. S. 185, Mr. Justice Brewer, delivering the opinion of the court on rehearing, said:

"Again and again has this court affirmed the proposition that no state can interfere with interstate commerce through the imposition of a tax, by whatever name called, which is in effect a tax for the privilege of transacting such commerce. And it has as often affirmed that such restriction upon the power of a state to interfere with interstate commerce does not in the least degree abridge the right of a state to tax at their full value all the instrumentalities used for such commerce." *Postal Telegraph Cable Co.* v. *Adams*, 155 U. S. 688. *Marye* v. *B. & O. Railroad*, 127 U. S. 117. *Western Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530. *Maine* v. *Grand Trunk*

*Ry. Co.*, 142 U. S. 217.    *Massachusetts* v. *Western Union Tel. Co.*, 141 U. S. 40.

We come now to the remaining question whether there are any provisions of law which authorize a tax u,,on such property when found within the jurisdiction of the state?

The appellant, it seems, contends that our laws, respecting taxation, were only intended to apply to car lines, or car companies owning and operating car lines within this State, and to such property connected with such lines as abides and has its actual *situs* within the State, and that there is no language employed in any of the provisions of law which contemplates the taxation of cars, belonging to an owner residing in a foreign state, and used in interstate commerce, although, in such use, such cars may, for a portion of the time, be within the jurisdiction of this State.

In Sec. 2, Art. 13, of the state constitution, it is provided: "All property in this State, not exempt under the laws of the United States, or under this constitution, shall be taxed in proportion to its value, to be ascertained as provided by law." This is an express constitutional provision and is adequate to impose a tax upon all property which has a *situs* within the State for such purpose, except property exempt under the laws of the United States, or under the constitution of this State. It is therefore apparent that there is an apt provision in the fundamental law under which the appellant's cars could be taxed, they, as we have seen, having a *situs* in the State for such purpose, and not falling within the exemption. Substantially the same provision is contained in Sec. 1, of the act of the legislature, approved April 5, 1896, Session Laws, p. 423, and what has been said respecting the constitutional provision above quoted, in the main applies with equal force

to that section of the statute. The value of all property, however, for the purposes of taxation is "to be ascertained as provided by law." The manner of ascertaining the value being thus referred to the legislature, it, in the same act, Sec. 55, Session Laws 1896, provided: "The president, secretary or managing agent, or such other officer as the State Board of Equalization may designate, of any corporation, and each person or association of persons owning or operating any railroad, street railway car, telegraph or telephone line or railway depot in this State, must, on or before the first Monday in March in each year, furnish the said board a statement signed and sworn to by one of such officers, or by the person or one of the persons forming such association, showing in detail for the year ending on the first Monday in March in each year; all the property, real, personal or otherwise, owned by said corporation, person or association of persons in the State, including a statement of mileage in each county, as valued on the first Monday of March of the same year and such other information as the board may require. Any officer of a railroad company, street railway, telegraph or telephone line, railway depot, or car company, failing on demand to furnish the statement required of him, shall be subject to the penalty provided in subdivision 2, Sec. 18, of this act."

This section makes it incumbent upon certain officers of railway, car, telegraph, and telephone lines to furnish the State Board of Equalization statements of property as therein provided, and for failure to do so subjects them to certain penalties. These statements were doubtless intended as a convenience for the board in making the assessment which is expressly provided for in section 56, as follows: "The State Board of Equalization must meet at the State capitol, or at such other places in the State as

the board may determine, on the second Monday in July, and continue in open session from day to day, Sundays and legal holidays excepted, until the third Monday in August, and later, if the business of the board requires it. At such meetings the board must assess all property and franchises of railroads, car, street railway, railway depot, telephone and telegraph companies, but franchises derived from the United States must not be assessed. All such property must be assessed in the name of the person, corporation or association owning, leasing or using the same. Between the first and third Mondays of August, the board must apportion the total assessment of all property and franchises of such companies to the several counties in proportion to the value of such property in each county."

This section authorizes, as will be observed, the assessment, by the board, of all the property referred to in the preceding section, and declares that all such property shall be assessed in the "name of the person, corporation or association owning, leasing or using the same." The manifest intention of the legislature, in the enactment of these provisions of statute, was that all such property should be taxed, whether owned by a resident of this State or not, if the same was used within the state by the owner or by some person or corporation to whom the owner entrusted it for such use. Counsel for the appellant, however, called attention to the fact that in Sec. 55, there is no punctuation between the words "street railway" and "cars," while the word "car" is punctuated by a comma in section 56, and insists that the real intention of the legislature was to treat the owners of car lines the same as owners of railroads, street railways, telegraph or telephone lines, and that where it used the word "car" in each section, it meant car lines or car companies having,

owning, operating and using such car lines within the State. In other words, that a car line means a physical line, or a line having a physical unity, as the realty composing a line of railroad between definite places, that, in order for the State to tax such property, there must be a physical unity instead of a unity of use and management, as was the case in respect to the cars in question. We cannot assent to this contention. The question of punctuation cannot be allowed to control in the construction of these provisions of the statute, against, as we think, the manifest intent of the legislature. It would be a most fallible standard by which to construe them. In the interpretation of statutes the true meaning of the lawmaker must be ascertained from the whole purview, and when that is manifest from a judicial inspection, the court will not permit punctuation to change it. To ascertain the real intention and meaning of the statute, the court will punctuate or disregard punctuation as may be necessary. Punctuation may, when the meaning is uncertain, furnish some indication of it, and in such case may even decide what the meaning is, but when the intention of the legislature is apparent from a reading of the statute, such intention must prevail regardless of punctuation. Suth. on Stat. Const., Sec. 232.

In this case we think the statute should be read with a comma between the words "street railway" and "car," and when so read the terms used mean "street railway line," "car line," etc., and "car line," in the sense employed in the several enactments, may mean a considerable number of cars operated by a car company, as a car line, without, as in the case at bar, the actual reality, over which the rolling stock runs, being owned by the owner of the cars. Evidently such line has a unity of use and management, and the several constitutional and statutory provisions are adequate to tax the cars when so employed

and found within the jurisdiction of the State. The same question here involved, was, under similar legislation before the Supreme Court of Colorado, in *Hall* v. *Refrigerator Transit Co.*, 24 Colo. 291, where, Mr. Justice Goddard, delivering the opinion of the court, said:

"It is clearly manifest that the purpose of these constitutional and statutory provisions is to subject all property *owned* or *used* by a railway or other corporation within the territorial limits of the State, to taxation according to its value, regardless of the domicile of its owner; and in so doing, they exercise a well-recognized function of legislation."

Legislation, which is claimed to grant immunity from taxation, will be strictly interpreted against the exemption. "In such cases the rule of strict construction applies, and, in order to relieve any species of property from its due and just proportion of the burdens of the government, the language relied on, as creating the exemption, should be so clear as not to admit of reasonable controversy about its meaning, for all doubts must be resolved against the exemption. The power to tax rests upon necessity, and is essential to the existence of the state." *Judge* v. *Spencer*, 15 Utah, 242; Suth. Stat. Const. Sec. 364.

Counsel for the appellant has cited, on this question, *Marye* v. *Baltimore and Ohio Railroad*, 127 U. S. 117, but that case cannot be regarded as controlling authority in this, because the legislation therein considered was entirely different from that considered herein, the same applying to domestic corporations only.

No point is made in this case concerning the apportionment of the tax among the several counties of the State. We are of the opinion that the tax in question is lawful, and that the court properly dismissed the action.

The judgment is affirmed, with costs.

ZANE, C. J. and MINER, J., concur.