## IN RE WILL OF MAX D. PETERSEN.

**TAXATION:** Inheritance Tax — Statute—Instruction—Exemptions.
1  The word "free," as used in Sec. 1481-a1, Subdiv. 4, Code Supplement, 1913, exempting property passing to "educational and religious societies or institutions, public libraries and public art galleries within this state and open to the free use of the public," from the collateral inheritance tax, does not mean that no compensation is to be exacted for the benefits bestowed, but because they are open and free to all who desire to use them and derive through them the benefits which they are supposed to confer. They are *free*, though they exact something to maintain and preserve their integrity and continuance.

**STATUTES:** Construction — Punctuation. Punctuation is subordinate to the context, and can never control the plain meaning
2  of a statute.

**STATUTES:** Construction—Verbal Inaccuracies—Clerical Errors.
3   Mere verbal inaccuracies or other clerical errors in a statute, in
the use of words or numbers, grammar, spelling, or punctuation,
will be corrected by the court, whenever necessary to carry out
the intention of the legislature, as gathered from the entire act.

**TAXATION:** Inheritance Tax—Statutes—Exemption—Foreign Edu-
4   cational Societies Subject to Tax.   Foreign educational societies
are not exempted by Sec 1481-a1, Subdiv. 4, Code Supplement,
1913, from the collateral inheritance tax, under the provision
that the tax will not be collected "when the property passes to
educational and religious societies or institutions, public libra-
ries and public art galleries within this state and open to the
free use of the public," as the words "within this state" not
only modify its immediate antecedent, "public art galleries,"
but also modify all institutions enumerated.

*Appeal from Scott District Court.*—WILLIAM THEOPHILUS,
Judge.

MAY 14, 1919.

'   THE question in this case involves the construction of
Section 1481-a1, Code Supplement, 1913, and the real ques-
tion is whether the exemptions found in that statute are
limited only to institutions of the character involved in
this suit within the state of Iowa.   The district court held
that the statute, properly construed, limited the exemptions
to institutions and societies within the state of Iowa.   Ap-
pellant is a nonresident society or institution, and appeals.
—*Affirmed.*

*Miles M. Dawson,* for appellant.

*Bollinger & Block, H. M. Havner,* Attorney General,
and *Henry H. Jebens,* County Attorney, for appellees.

GAYNOR, J.—The determination of this case involves
the construction of Section 1481-a1, Supplement to the
Code, 1913, which excepts certain property from the oper-
ation of the collateral inheritance tax law found in Title
VII, Chapter 4, of said Supplement.   The part especially

involved is Subdivision 4 of said section, and the section reads as follows:

"The tax imposed by this act shall not be collected * * *

"4. When the property passes to educational and religious societies or institutions, public libraries and public art galleries within this state and open to the free use of the public."

The controversy arose in this way: One Max D. Petersen, a resident of the city of Davenport in this state, died, leaving a will, in which he bequeathed $40,000 to the American Institute for Scientific Research of New York City, to be used for the purpose of the American Society for Psychical Research of the same city, a branch of said institute. The society to which the bequest is made is a corporation, duly organized and existing under and by virtue of the laws of the state of New York. Neither said society nor its branch is incorporated under the laws of the state of Iowa. It is an educational society, organized and conducted for purposes of scientific research.

It is the claim of said society that the amount bequeathed to it is not subject to the collateral inheritance tax, because of the exemption found in Subdivision 4 of Section 1481-a1 of the Supplement to the Code, 1913. It is the claim of the state treasurer that it is.

The question then is: Does the exception found in Subdivision 4 exempt all institutions of the character from the collateral inheritance tax, no matter where located, or does it exempt only such institutions as are within the state of Iowa? The contention of the society is that it exempts all institutions of the character of this institution, no matter where located. The contention of the state is that it exempts only such institutions of that character as are within the state of Iowa, and does not exempt such institutions not within the state of Iowa.

It is conceded that the institution here sought to be

subjected is of the *character* of institution covered by the
exemption. It is also conceded that it is not within the
state of Iowa, so the question is clean cut: Does the stat-
ute exempt all institutions of the character of this, no mat-
ter where situated, or does it exempt those only that are
within the state of Iowa? The question answered either
way settles this controversy. If this subdivision of the stat-
ute relieves all institutions of the character described from
tax, no matter where situated, the judgment must be for
the appellant. If it excepts only such as are within the
state of Iowa, then the judgment must be for the appellee.
The court below found that nonresident institutions of the
character described are subject to the tax, and that the ex-
ception protects only such institutions as are within the
state.

It is well to have before us all the subdivisions of this
exempting statute, in so far as they relate to public societies,
associations, institutions, and corporations. They are as
follows:

"4. When the property passes to educational and reli-
gious societies or institutions, public libraries and public
art galleries within this state and open to the free use of
the public;

"5. Property passsing to or for hospitals within this
state open to the public, and not operated for gain, or to
societies within this state organized for purposes of public
charity, including cemetery associations, but not including
societies maintained by fees, dues, or assessments in whose
benefits the public may not share.

"7. When the property passes to a municipal or po-
litical corporation within this state for a purely public pur-
pose."

It will be noted that, in all these subdivisions, the
thought is to protect from the operation of the collateral
inheritance law all societies, associations, institutions, and

corporations therein described, because of the benefit which the public is supposed to derive from their creation, preservation, and continuance; hospitals within the state not operated for gain; societies within the state organized for public charity; property passing to municipal or political corporations within the state for purely public purposes; property passing to educational and religious societies or institutions, public libraries and public art galleries within the state. The thought and purpose of the legislature seems to be to encourage bequests to institutions within the state which, in their character and purpose, serve the interests of the people of the state. The thought lying back of all the exemptions is that no institution or society within the state shall be subject to this tax when it has in it the elements of public service, subject, however, to the exemptions found in the statute. It recognizes that there are some institutions, though of a public character and rendering public service, that ought not to be within the protection of the exemption, for the reason that, though they be of a public character, and though they do render public service, they do it for private gain. To such institutions, corporations, or societies it seems to be the thought not to grant exemptions, because of the mercenary and commercial features attached. All bequests to institutions, libraries, art galleries, hospitals, societies organized for public charity, including cemetery associations, municipal or political corporations organized and carried on for purely public purposes, and institutions which are educational or religious in their character, were thought entitled to the protection provided by the exemption, if within the state and open and free to the use of the public. The word

1. TAXATION: inheritance tax: statute: instruction: exemptions.

"free," as used in this statute, does not mean that no compensation is exacted for the benefits bestowed, but that they are open and free to all who desire to use them and

derive through them the benefits which they are supposed to confer. They are free, though they exact something to maintain and preserve their integrity and continuance.

Coming now to the subdivision relied upon for the exemption, we find that the spirit of the statute exempts property that passes to educational and religious societies and institutions, public libraries and public art galleries within the state, open to the free use of the public, and that, in recognition of this spirit, they ought not to be subject to the collateral inheritance tax.

As has been frequently said, "Words are the vehicle of thought." They are used, and their purpose is, to convey ideas, and when used in a statute, they are intended to convey the thought and purpose of the legislature. The thought that prompted this exception was that all property ought not to be subject to the collateral inheritance tax; that some property ought to be exempted from it because it serves a useful public purpose: and to this end it named educational and religious societies or institutions, public libraries and public art galleries within the state, when open and free to the use of the public.

When we consider that taxes are levied, collected, and expended for the use and benefit of the people of the state, and that any property made subject to taxation in the state is made so for the purpose of revenue to be used by the government in the service of the people of the state, the thought arises: Why these exemptions? Not for the benefit of the institutions as such—surely not. It must, then, be because of the public need of them, and the service they give to the people of the state. It must be for the benefit of the people of the state, whose welfare is in the keeping of the state. The thought then comes: It is to institutions within the state,—institutions that render service to the people of the state,—that the exemptions should be given. The state, exercising its governmental functions, exacts

revenue from the citizen of the state and his property to meet the obligations it assumes for the people in its governmental capacity. When it exempts, the exemption should be for public reasons, and because of some benefit to the people of the state, and not for the benefit of an institution exempted, unless it renders public service to the state or her people.

It is contended, however, that, prior to the enactment of the law as found in Section 1481-a1 of the Code Supplement, 1913, now under consideration, the legislature had seen fit to relieve all institutions of this character from the burden of the collateral inheritance tax, though not residents of the state, and that, in the statute now under consideration, in the form in which it is written,—giving due consideration to the manner in which it is punctuated, —a purpose is shown to make institutions like the one in question not subject to the collateral inheritance tax. Is this true? Turning to these statutes enacted prior to the present statute, we find Section 1467 of the Code of 1897 reading as follows:

"All property *within the jurisdiction of this state,* and any interest therein, whether belonging to the inhabitants of the state or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritance of this or any other state,   *   *   *   *other than to or for the use of the father, mother, husband, wife, lineal descendant, adopted child, the lineal descendant of an adopted child of a decedent,* or to or for charitable, educational or religious societies or institutions *within this state,* shall be subject to a tax of five per centum of its value."

Section 1467 of the Code Supplement of 1907 reads as follows:

"*All property within the jurisdiction of this state,* and any interest therein, whether belonging to the inhabitants of this state or not,   *   *   *   which shall pass by will

* * *  after the death of the grantor or donor, to any person in trust or otherwise, *other than to or for the use of the father, mother, husband, wife, lineal descendant, adopted child, the lineal descendant of an adopted child of a decedent, stepchild, or the lineal descendant of a stepchild of a decedent,* or to or for *charitable, educational or religious societies or institutions, including hospitals, public libraries and public art galleries* kept open to the free use of the public not less than three days of each week; within this state, shall be subject to a tax of five per centum of its value."

It will be noted, from a reading of these statutes, that the first statute exempts from the tax institutions of the character here under consideration only when within the state. The section in the Code Supplement of 1907 is practically the same, except that it adds to the exemption hospitals, public libraries, and public art galleries kept open for the free use of the public for three days in the week. A semicolon follows the catalogue of the things exempted, and precedes the words "within this state;" while, in the original section found in the Code of 1897, there is no punctuation between the things exempted and the words "within this state," and a comma is made to follow the words "within this state" only. It will be noted that both sections provide that all property within the jurisdiction of the state is subject to taxation, except such as is by the statute itself exempted.

It is contended, however, that, in the last enactment of the law on this subject, found in Section 1467 of the Code Supplement of 1907, preceding the act now under consideration, the legislature had seen fit to relieve, by the use of a semicolon, all institutions of this character, no matter where situated, from the burden of this collateral inheritance tax, and that the statute now under consideration, in the form in which it is written, giving due consideration to

the manner in which it is punctuated, still indicates a purpose to relieve institutions like the one in question from the burden of the collateral inheritance tax. But is this truly so? When we turn to Section 1467 of the Code of 1897, we find that the only exemptions of property passing to institutions of this character that the statute made, were made in favor of charitable, educational, and religious societies or institutions *within the state*. When we turn to the same section as amended, and appearing in the Code Supplement of 1907, we find that some other institutions were added to the exemptions: to wit, hospitals, public libraries, and public art galleries kept open to the free use of the public for three days in each week. It is claimed that this statute did not limit the exemption to institutions within the state, for that, after the things exempted, appeared a semicolon, which separated it from the words "within this state." Now it is plain to us that the semicolon is the result of either a typographical error or ignorance in punctuation. We have not the slightest doubt that the only purpose of this enactment appearing in the Code Supplement of 1907 was to add to the exemptions other institutions within the state, and that the words "within the state" were intended to limit the exemption as before, and not to enlarge the territorial area of the exemptions as limited in the Code of 1897. We are justified in saying this from an examination of the Acts of the Thirty-fourth General Assembly, from which the exemption statute now under consideration was incorporated into the Code Supplement of 1913, as Section 1481-a1. There we do not find the semicolon separating the things exempted from the words "within this state." Everything exempted in this last statute seems to have reference to property within the state, and we have no doubt that this fourth subdivision was enacted for the sole purpose of curing the apparent inaccuracy in punctuation found in the Code Supplement of 1907. No other conclusion can be reached in reading the section itself:

"When the property passes to educational and religious societies or institutions, public libraries and public galleries within this state," it shall not be subject to the tax.

Section 1481-a, Code Supplement, 1913, announces the rule that all property that is, at the death of the owner, *within this state,* or that is subject to, or thereafter, for the purpose of distribution, is brought within this state and becomes subject to the jurisdiction of the courts of this state, or the property of any decedent domiciled within this state at the time of his death, even though the property was situated outside the state at the time of the death, except real property located outside of the state, which shall pass by will or by the statutes of inheritance, etc., is subject to a tax of five per centum. Then come the exceptions found in Section 1481-a1. This section gives exemptions, and the exemptions are only found applying to property within the state. We cannot stumble over a semicolon or a comma to defeat what is the evident purpose and intent of the legislature, made to appear in every statute. Punctuation, including quotation marks, brackets, etc., is subordinate to the context, and can never control the plain meaning of the statute. *Waters-Pierce Oil Co. v. State,* 48 Tex. Civ. App. 162 (106 S. W. 918); *Union R. T. Co. v. Lynch,* 18 Utah 378 (55 Pac. 639, 48 L. R. A. 790). Mere verbal inaccuracies or other clerical errors in the statute in the use of words or numbers, grammar, spelling, or punctuation, will be corrected by the court, whenever necessary to carry out the intention of the legislature, as gathered from the entire act. See *Fortune v. Commissioners,* 140 N. C. 322 (52 S. E. 950). In *Waters-Pierce Oil Co. v. State,* supra, it was said, on page 187:

"We are not willing to hold that it was the intention of the legislature to do so, merely because a comma was so

*2. STATUTES: construction: punctuation.*

*3. STATUTES: construction: verbal inaccuracies: clerical errors.*

used as to render that construction plausible. In construing written laws, courts are not bound by rules of grammar, and may disregard them in order to give effect to manifest legislative intention."

In *Union R. T. Co. v. Lynch*, supra, it was said:

"The question of punctuation cannot be allowed to control, in the construction of these provisions of the statute; against, as we think, the manifest intent of the legislature. It would be a most fallible standard by which to construe them. In the interpretation of statutes, the true meaning of the lawmaker must be ascertained from the whole purview, and when that is manifest from a judicial inspection, the court will not permit punctuation to change it. To ascertain the real intention and meaning of the statute, the court will punctuate, or disregard punctuation, as may be necessary. Punctuation may, when the meaning is uncertain, furnish some indication of it, and in such case may even decide what the meaning is; but, when the intention of the legislature is apparent from a reading of the statute, such intention must prevail, regardless of punctuation."

In the *Fortune* case, supra, the court said:

"Some of the cardinal rules for the interpretation of a statute are that it should be construed with reference to its general scope and the intent of the legislature in enacting it, and, in order to ascertain what was the purpose, we must give effect to all its clauses and provisions. Where the language used is ambiguous, or admits of more than one meaning, it is to be taken in such a sense as will conform to the scope of the act and effectuate its object. The use of inapt, inaccurate, or improper terms or phrases will not invalidate the statute, provided the real meaning of the legislature can be gathered from the context, or from the general purpose and tenor of the enactment. Clerical errors or misprisions which, if not corrected, would render

the statute unmeaning or incapable of reasonable construc-
tion, or would defeat or impair its intended operation, will
not necessarily vitiate the act; for they will be corrected, if
practicable. Nor will mere inadvertences or omissions have
that effect, provided they can be supplied by reference to
the context or to other statutes, and the true reading of
the statute made obvious and its real meaning apparent."

To say that the words "within this state" modify only
its immediate antecedent, "public galleries," is, in the judg-
ment of the writer, a limitation not justified by the whole
statute. Nor do we think the institutions
mentioned should be considered in pairs.
They were not so considered in the statute
of 1897, or recognized in that way in the
statute of 1907. We need to do no more
than read the whole exempting statute, with
all its antecedents, to reach the conclusion
that the district court was right in its conclusion, and that
the judgment ought to be, and it is,—*Affirmed.*

4. TAXATION:
inheritance
tax: statutes:
exemption:
foreign educa-
tional societies
subject to tax.

LADD, C. J., WEAVER, EVANS, SALINGER, and STEVENS,
JJ., concur.