## Degn Estate (No. 2)

*Federico F. Mauck* and *Clarence E. Hall,* for appellants.

*Daniel L. Quinlan, Jr.,* Special Attorney General, for Commonwealth respondent.

TAXIS, P. J., March 29, 1956.—The question is whether a collateral inheritance tax is to be imposed upon the bequest to trustees of a colonial mansion and furnishings to be maintained by them as a museum "for the enjoyment and education of the people of the Commonwealth of Pennsylvania and others" where testatrix conferred a discretionary power "to charge admission". This appeal by the trustees from appraisement of such tax raises this issue.

Alice S. Degn died February 15, 1953. By the terms of her will she named Fidelity-Philadelphia Trust Company, George A. Landell and Nathaniel B. Groton, coexecutors and trustees. After making certain legacies and bequests, she created a trust, which she designated

"The Hope Lodge Foundation", to which she devised and bequeathed her house and its furniture, the surrounding land, and the residue of her estate to be held ". . . in perpetuity for the enjoyment and education of the people of the Commonwealth of Pennsylvania and others, as the museum and permanent exhibit typical of the architecture and furnishings of the Colonial period of America". She authorized the trustees to manage the foundation ". . . in such manner as shall maintain it in good condition and make it available for the education and enjoyment of those who wish to visit it".

Hope Lodge was built in 1723 by Samuel Morris, a Welsh Quaker. It was designed by Sir Christopher Wren and is believed to be the first Georgian type of manorial house built in the colonies. Mr. and Mrs. Degn spent the latter years of their lives restoring this baronial house to its original condition. The photographs offered in evidence show it to be a place of exquisite beauty and charm.

Among the powers which testatrix granted to her trustees "in their sole discretion" were included the following: To make such rules and regulations as are necessary for proper management, to receive contributions of cash, paintings, or furnishings, to purchase additional paintings or furniture and finally, to charge admission.

The Transfer Inheritance Tax Act of July 9, 1919, P. L. 794, as amended, 72 PS §2483, reads in parts pertinent, as follows:

"All estates in any buildings, ground, books, manuscripts, curios, pictures, statuary or other works of art, specimens of natural history, or other scientific collections . . . passing by will from a person seized or possessed thereof . . . whether the donor of such power died before or after the date of this act, to any municipality, corporation, or unincorporated body, for

the sole use of the public by way of free exhibition within the State of Pennsylvania, whether in trust or otherwise, shall not be subject to any collateral inheritance tax for the use of the Commonwealth."

The Commonwealth contends that since the trustees have power to charge admission, the gift to the trustees is not "by way of free exhibition" within the meaning of the Transfer Inheritance Tax Act and therefore is taxable, or stated in another way, the word "free" means the absence of charge.

A hearing was held at which time testimony established that the trustees assumed their duties on November 9, 1954, and formally accepted the trust, that a caretaker has been on the premises and that Mr. Landell has been active as curator, that visitors have been coming from many parts of the country, totaling as follows: In the year 1953, 206; in the year 1954, 452; in the year 1955, 523.

There was offered into evidence a certificate from the United States Department of the Interior describing Hope Lodge "as possessing exceptional historic or architectural interest and as being worthy of most careful preservation for the benefit of future generations". There was also offered into evidence a ruling of the United States Treasury Department that the Hope Lodge Foundation "is entitled to exemption from Federal income tax as an educational organization in section 501(c)(3) of the Internal Revenue Code of 1954".

A Board of Managers consisting of 17 men of prominence residing in the general locality have taken an active part in assisting the trustees in the management and operation of the Hope Lodge Foundation. Many photographs were offered into evidence, which substantiated the fact that Hope Lodge possesses exceptional historic and architectural interest. R. Sturgis

Ingersoll, Esq., president of the Philadelphia Art Museum, was called on behalf of the trustees and testified that the colonial architecture of Hope Lodge is "almost a supreme example" of the Georgian type of manorial house built in the colonies in the early 1700's. There is no dispute that the evidence clearly establishes that the use for the public is sole, and that it is not hampered or diminished by any other subordinate or possibly nonpublic use.

The real pinch of the case is whether or not the discretionary power lodged in the trustees to charge admission so taints the gift as to make it taxable. No charge has been made to date and there is no evidence that an admission charge is contemplated.

"Taxability is to be determined at the moment of death according to the kind of items given and the purposes of the gift as expressed by the will. We, therefore, put out of consideration all evidence as to the manner in which the grounds are now being administered. The trustees cannot change the trust so as to bring the gift within the act or take it out of the act": Morris Estate, 28 D. & C. 650.

Mr. Ingersoll, as a museum director, eminently qualified to express an opinion, stated that "by way of free exhibition" would mean to him that "the public, under reasonable regulations, would have free access at times, to the museum, but not necessarily at all times", and expressed as his opinion that the phrase "by way of free exhibition" means "that. the museum should not be for the benefit of the private coterie of the trustees and their friends . . . that it should be free to the public does not mean that under proper regulation, and certain days, they didn't have to make a token payment to get in".

The word "free" must be considered in the light of the legislative purpose in authorizing tax exemptions for the adjective "free" has many meanings. See Ox-

ford English Dictionary, page 520. Quite clearly the purpose of the exemption is to protect from the operation of the tax laws such a museum because of the benefit the public derives from its creation, preservation and continuance and is designed to encourage such gifts which in their character and purpose serve the interests and welfare of the people.

The meaning of "free" as urged by the Commonwealth as much too narrow when the word is viewed in the setting created by a consideration of the legislative purpose.

The word "free" as used in this statute does not mean that no charge or compensation is to be exacted for the benefits bestowed, but on the contrary means to be thrown open, made accessible and be free to all who desire to use the facilities and to enjoy the benefits which such an exhibit confers. Such an exhibit is "by way of free exhibition" even though something is exacted to maintain and preserve its integrity and continuance: In re Petersen's Will, 186 Iowa 75, 172 N. W. 206, 207; cf. Webber Hospital Association v. McKenzie, 104 Maine 320, 71 A. 1032, 1035. By way of analogy it may be noted that a park does not lose its tax exemption by reason of the fact that park visitors are required to pay reasonable charges: Newcastle v. Lawrence County, 353 Pa. 175, 181, 182; Bernstein v. Pittsburgh, 366 Pa. 200, 209, 210.

In the Bernstein case, a narrow meaning of the word "free" was urged but rejected by the court when it said: "In our opinion no such import can be ascribed to the word 'free', which evidently means merely that the park is to be a place of free resort in the sense that it is to be a public, not a private, park, and, as such, is to be open to the public without charge or hindrance in any respect; it cannot be realistically construed, however, as meaning that . . . there can be no . . . charge made for admission. . . ."

After consideration of the will, the testimony presented and learned arguments of counsel for the trustees and the Commonwealth, I conclude that the Hope Lodge Foundation is "for the sole use of the public by way of free exhibition" and qualifies for tax exemption within the meaning of the applicable tax statute, that the fact that the trustees may in their discretion charge admission does not destroy its tax exemption. I am aware of that line of cases which states that provisions exempting properties from taxation must be strictly construed, yet I am persuaded that a token admission charge would not change this into a non-public or private exhibition, but would remain as a free exhibition.

And now, March 29, 1956, the appeal is sustained.