The Waters-Pierce Oil Company v. State of Texas.

No. 4212.    Decided December 11, 1907.

**1.—Receiver—Appeal.**

One who has appealed from an order appointing a receiver and obtained a review of the proceedings with reference thereto is not entitled to raise the same questions again on appeal from the final judgment in the cause.

**2.—Unlawful Combination—Ownership of Corporate Stock—Charge.**

The prohibition in the Act of March 31, 1903 (anti-trust law) against a combination of capital etc., of corporations for preventing or lessening competition by the acquisition by one corporation of the stock of another does not render the corporation whose stock is so acquired liable to the penalties therein denounced except on its participation in the unlawful act. But see charge held (Key, J. dissenting) not to have the effect of imposing such liability.

**3.—Same—Harmless Error.**

Where one penalty is imposed by a verdict and judgment establishing the violations of several provisions of the anti-trust law of 1903, error in the submission of the issues arising on the alleged commission of one of the prohibited acts is not ground for reversal if the issue as to the other unlawful act was properly submitted and the recovery thereon sustained.

**4.—Constitutional Law—Anti-trust Laws.**

The constitutionality and validity of the Acts of May 25, 1899, and March 31, 1903 (the anti-trust laws) sustained.

**5.—Anti-trust Law—Limitation—Civil and Criminal Actions.**

The Acts of May 25, 1899, and March 31, 1903 (the anti-trust laws) vest in the State a civil right of action for the pecuniary penalties prescribed for violations of the provisions of those statutes, to be prosecuted in the district courts and governed by the rule that limitation does not run against the State, and not affected by articles 218 and 219 requiring indictments or informations for felonies to be prosecuted within three years from the commission of the offense and indictments or informations for misdemeanors within two years.

**6.—Same—Suit by State.**

If an exception to the rule that limitation does not run against the State should be recognized in cases merely for actions for debt, not for the preservation of public rights, still its suits for penalties under the anti-trust laws is to preserve public rights and promote public policy, and would not fall within such exception, and neither the two years nor the four years limitation of civil actions would apply.

**7.—Constitutional Law—Labor Organization—Discrimination.**

The Act of May 27, 1899, protecting working men in the right of organization, does not authorize anything to be done by trades unions which was prohibited by the Act of May 25, 1899 (anti-trust law) and creates no such discrimination as would under the latter act be unconstitutional.

**8.—Penalties Under Repealed Law—Saving Clause.**

The repeal by the Act of March 31, 1903, of the Act of May 25, 1899, reducing the amount of the penalties (anti-trust laws) but with a proviso saving the right of the State to penalties and forfeitures already incurred did not prevent action by it for such penalties under the repealed law.

**9.—Same.**

The substitution by the Act of March 31, 1903, of a lower penalty for violating its prohibitions than was imposed for similar violations by the Act of May 25, 1899, saving the State's right to recover penalties for things done before the latter Act took effect left the original and not the reduced penalties in force as to such prior offenses.

**10.—Same—Statutory Construction—Punctuation.**

The location of a comma in a proviso saving the "rights of the State of Texas to recover penalties or forfeit charters of domestic corporations, or prohibit foreign corporations from doing business in this State, for acts committed before this Act took effect," did not justify the construction that the right to penalties against domestic corporations only was preserved, no reason existing for such discrimination.

**11.—Excessive Fines and Forfeitures.**

The Acts of May 25, 1899, and of March 31, 1903 (the anti-trust laws) are not unconstitutional as imposing excessive fines and forfeitures (State v. Laredo Ice Co., 96 Texas, 467); nor was the imposition of penalties aggregating $1,623,900 excessive when its magnitude was due to defendant's repeated and long continued violations of the law, covering a period of six years.

**12.—Anti-trust Law—Recovery Sustained.**

Evidence considered and held to show a violation of the anti-trust laws of Texas by an agreement between defendant and another foreign corporation, the object of which was to create a monopoly and control the price of petroleum oil in the State and acts done in the State in pursuance of such agreement.

Appeal from the District Court of Travis County. Tried below before the Hon. V. L. Brooks.

*Clark & Bolinger, Cochran & Penn, D. W. Odell,* and *N. A. Stedman* (*J. D. Johnson* and *N. S. Priest,* of counsel), for appellant.—The anti-trust Act of May 25, 1899, was repealed by the anti-trust Act of March 31, 1903. Section 35, article 3, Constitution of Texas; Anti-trust law of May 25, 1899, General Laws of Texas, Twenty-sixth Legislature, p. 246; Anti-trust law of March 31, 1903, General Laws of Texas, Twenty-eighth Legislature, p. 119; Constitution of the United States, and section 1 of the Fourteenth Amendment thereto.

No right was reserved to the State by said Act of March 31, 1903, to recover penalties against foreign corporations for violations of said Act of May 25, 1899, or any other law upon said subject. Act May 25, 1899, supra; Act March 31, 1903, supra; Collins v. Warren, 63 Texas, 315; Roberts v. Yarboro, 41 Texas, 452; 26 Am. & Eng. Enc. of Law, p. 680; United States v. Dickson, 15 Peters, 165.

This suit, though civil in form, is a prosecution against the defendant to recover penalties for an offense, the plaintiff's cause of action is criminal in its character, and the bar of limitation of two years prescribed by article 219 of the Code of Criminal Procedure precludes a recovery by the plaintiff of any penalties against the defendant under such anti-trust Act of May 25, 1899. Article 219, Code Criminal Procedure; Missouri, K. & T. Ry. Co. v. State, 100 Texas, 420; Queen Insurance Co. v. State, 86 Texas, 250; Stooksbury v. Swan, 85 Texas, 563; Clepper v. State, 4 Texas, 242; 1 Bishop's Criminal Law, sec. 32; 22 Cyc., p. 186; Wisconsin v. Pelican Insurance Co., 127 U. S., 265; Boyd v. United States, 116 U. S., 616; United States v. Shapleigh, 54 Fed. Rep., 126; Lees v. United States, 150 U. S., 480; Commonwealth v. Equitable Life Ass. Soc., 38 S. W. Rep., 491; Wood on Limitation, sec. 16; Ex parte Lange, 18 Wallace, 163; Bristol v. Washington County, 177 U. S., 147.

It appears from the face of the plaintiff's petition that the plaintiff's cause of action, if any it ever had, to recover penalties under the anti-trust Act of May 25, 1899, accrued more than two years before the institution of this suit and therefore if the plaintiff's cause of action is not to be regarded as criminal in its nature, and not governed by article 219 of the Code of Criminal Procedure, such cause of action must be treated as civil in its character, and having accrued more than two years before the institution of this suit, it is barred by the statute of limitation of two years, as prescribed in article 3354 of the Revised Civil Statutes of Texas.

Revised Civil Statutes, art. 3354; Buswell on Limitation, sec. 97; Stockwell v. United States, 13 Wallace, 531; Davidson v. Missouri Pacific Ry. Co., 3 Willson's Cases, p. 216; Rockwell v. Ohio, 11 Ohio, 130; State v. Moore, 19 Tenn. (Meigs), 476.

Plaintiff's cause of action, if not regarded as criminal in its nature, is civil in its character, so much thereof as accrued prior to the 22d day of September, 1902, is barred by the statute of limitation of four years as prescribed in article 3358 of the Revised Civil Statutes of Texas. Revised Civil Statutes, art. 3358; Boswell v. Robinson, 33 N. J. Law, 273, and also same as above.

Any violator of said Act is guilty of a felony, and as to such violator the period of limitation for the commission of the felony is three years as prescribed by article 218 of the Code of Criminal Procedure of the State of Texas, and therefore a person prosecuted by an action, civil in form, for the recovery of the penalty of $50 per day for violating said Act is, if no other period of limitation is available to him, entitled to the protection of the statute of limitation of three years prescribed by said article 218 of the Code of Criminal Procedure by analogy. Pomeroy's Equity Jurisprudence, 419; Roller v. Holly, 176 U. S., 398.

Section 2 of the anti-trust Act of May 25, 1899, does not sufficiently designate an offense against the laws within the requirement of article 3 of the general provisions of the Penal Code of the State of Texas, which declares that no person shall be punished for any act or omission unless the same is made a penal offense and a penalty is affixed thereto by the written law of this State; nor within the requirement of article 6 of the general provisions of the Penal Code of the State of Texas, which prescribes that whenever it appears that a provision of the penal law was indefinitely framed or of such doubtful construction that it can not be understood, either from the language in which it is expressed or from some other written law of the State, such penal law shall be regarded as wholly inoperative; nor within the requirement of article 9 of the general provisions of the Penal Code of the State of Texas, which prescribes that no person shall be punished for an offense not made penal by the plain import of the words of the law.

Section 6 of the anti-trust Act of May 25, 1899, does not sufficiently define an offense within the requirement of article 3 of the general provisions of the Penal Code of the State of Texas, which declares that no person shall be punished for any act or omission unless the same is made a penal offense and a penalty is affixed thereto by the written law of this State; nor does it sufficiently define an offense within the requirement of article 6 of the general provisions of the Penal Code of the State of Texas; nor does it sufficiently define an offense within the requirement of article 9 of the general provisions of the Penal Code of the State of Texas. Queen Ins. Co. v. State, 86 Texas, 250; Missouri, K. & T. Ry. Co. of Texas v. State, 100 Texas, 420; Louisville & N. Ry. Co. v. Commonwealth, 35 S. W. Rep., 129; Tozer v. United States, 52 Fed. Rep., 917; Louisville & N. Ry. Co. v. R. R. Commission of Tenn., 19 Fed. Rep., 679.

The Acts in question denied to defendant the benefit of that part of the Fourteenth Amendment to the Constitution of the United States which provides that no State shall deprive any person of property without due process of law. Missouri, K. & T. Ry. Co. v. State, 100 Texas, 420; Louisville & N. Ry. Co. v. Commonwealth, 35 S. W. Rep., 129; Chicago, B. & Q. Ry. Co. v. Chicago, 166 U. S., 226; Hagar v. Reclamation Dist., 111 U. S., 701; Bank of Columbia v. Okely, 4 Wheaton, 235; State v. Loomis, 115 Missouri, 307; People v. Gillson, 109 New York, 389.

The verdict of the jury in assessing penalties against the defendant at the sum of $1,549,500 for alleged violations of law, for each of the days between May 31, 1900, and March 31, 1903, was so grossly and shockingly excessive as to show passion and prejudice on the part of the jury against the defendant. Constitution of Texas, art. 1, sec. 13; Penal Code, art. 2; Acts of 1903, p. 119; State v. Laredo Ice Co., 96 Texas, 467; Cooley's Constitutional Limitations, 401.

The action of the court in overruling appellant's motion for a new trial, and its refusal to set aside the verdict of the jury, and in entering judgment upon the verdict against appellant, results in depriving appellant of its property without due process of law, in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States. Cotting v. Kansas City Stock Yards Co., 183 U. S., 101; Gates v. Hooper, 90 Texas, 563; State v. Shippers Comp. Co., 95 Texas, 603; Railway Co. v. State, 87 S. W. Rep., 336.

The court erred in overruling defendant's general exception to the motion or application of the State for the appointment of a receiver. (Tr., p. 655); Revised Statutes, arts. 1177, 1181, 1191 and 1337; Hall v. Jackson, 3 Texas, 305; Nye v. Gribble, 70 Texas, 458; May v. Taylor, 22 Texas, 348; Mann v. Falcon, 25 Texas, 276; Bledsoe v. Wills, 22 Texas, 650; McConkey v. Henderson, 24 Texas, 212; Ex parte Lange, 18 Wallace, 175; Townes' Pleading, pages 18 to 20; Bailey on Jurisdiction, sec. 23; Pomeroy Eq. Remedies, sec. 118. That a proceeding after judgment must be brought as a new suit: Munds v. Cassidey, 98 N. C., 558; Thayer v. Hart, 24 Fed. Rep., 558.

*Robert V. Davidson,* Attorney-General; *Jewel P. Lightfoot,* Assistant; *John W. Brady,* County Attorney; *Gregory & Batts* and *Allen & Hart,* for appellee.—The anti-trust Act of March 31, 1903, expressly preserves all the rights of the State to recover penalties, to forfeit charters and prohibit foreign corporations from doing business in the State, and the cause of action asserted in this cause is not affected by the repeal of the Act of 1899. Anti-trust law, May 25, 1899, General Laws of Texas, Twenty-sixth Legislature, p. 246, and amendment, General Laws of Texas, Twenty-sixth Legislature, p. 310; Anti-trust law of March 31, 1903, General Laws of Texas, Twenty-eighth Legislature, p. 119, sec. 17; Penal Code, arts. 15, 16, 17, 18, 19 and 20; Snyder v. Compton, 87 Texas, 374.

This being a civil suit to recover statutory penalties, limitation does

not run against the State.  Acts Twenty-sixth Legislature, General Laws of 1899, pp. 246 and 310; Acts Twenty-eighth Legislature, General Laws, p. 119; Brown v. Sneed, 77 Texas, 471; Mellinger v. Houston, 68 Texas, 37; Governor v. Albright, 21 Texas, 753; Davidson v. Missouri Pacific Ry. Co., 3 Texas App. Civ., 217; State v. Waters-Pierce Oil Company, 67 S. W. Rep., 1057; Stockwell v. United States, 13 Wallace, 531; In re Rosey, Federal Cases, 12,066; United States v. Colt, Federal Cases, 14,839; United States v. Lyman, Federal Cases, 15,647; United States v. Bougher, Federal Cases, 14,627; United States v. C. B. Church, Federal Cases, 14,762; Thompson v. Bassett, 5 Indiana, 535.

The Acts of 1899 and 1903, being valid acts, the court did not err in overruling the several special exceptions. State v. Laredo Ice Co., 96 Texas, 461; State v. Shippers' Compress Co., 95 Texas, 603; National Cotton Oil Co. v. The State, 6 Texas Court Rep., 510; 197 U. S., 115; State v. Missouri, K. & T. Ry. Co., 91 S. W. Rep., 214.

The anti-trust law of 1903 did not ameliorate the penalty provided for violations of the Act of 1899.  Wall v. State, 18 Texas, 682; Martin v. State, 24 Texas, 61; Am. & Eng. Ency. of Law, vol. 28, sec. (c), p. 738.

The verdict of the jury was amply warranted by the evidence, was not excessive and showed neither bias nor prejudice on the part of the jury against the defendant.  Texas anti-trust Act of 1899; State v. Laredo Ice Company, 96 Texas, 467; Martin v. Johnston, 33 S. W. Rep., 306; 13 Am. and Eng. Ency. of Law (2d ed.), 60; Southern Express Company v. Walker, 92 Va., 66; 15 Century Digest, secs. 3304-3309; State v. Rodman, 58 Minn., 402; 27 Am. and Eng. Ency. of Law, 779.

The judgment did not deprive defendant of its property without due process of law in contravention of section 1 of the Fourteenth Amendment to the Constitution of the United States; in that the court proceeded under a valid law of the State of Texas in accordance with the law, passed in the lawful exercise of the police power of the State.  Waters-Pierce Oil Co. v. Texas, 177 U. S., 28; Waters-Pierce Oil Co. v. State, 44 S. W. Rep., 936; National Cotton Oil Co. v. State, 197 U. S., 115; Smiley v. Kansas, 196 U. S., 447.

KEY, ASSOCIATE JUSTICE.—This case involves alleged violations of the anti-trust laws of this State, and as the charge of the able judge who tried the case sufficiently states the nature of the suit as it was submitted to the jury, and correctly defines the provisions of the anti-trust statutes applicable to the case, and states the issues that were decided by the jury, it is deemed proper to set out the charge in full, which is as follows:

"Gentlemen of the jury:  In this case the State of Texas, as plaintiff, has sued the Waters-Pierce Oil Company, a private corporation chartered under the laws of the State of Missouri, and doing business in Texas by virtue of a permit issued to it by the State of Texas on May 31, 1900, as defendant, to cancel said permit and to recover penalties for violations of the anti-trust laws of

Texas, which the State alleges the defendant has committed on each and every day from May 31, 1900, to April 29, 1907.

"The State alleges that on or about January 1, 1870, John· D. Rockefeller, John D. Archbold, H. H. Rogers, Henry M. Flagler, and a number of other persons conceived the scheme of monopolizing and controlling the business of refining, transporting and selling petroleum and the products thereof throughout the United States, including the State of Texas, and that said persons to that end and for that purpose entered into a conspiracy among themselves and with other individuals and corporations, including the defendant corporation, which conspiracy the State alleges continued in force and effect from the date of its formation until the date of the filing of the State's second amended petition in this case, and the State further alleges that in pursuance of said alleged conspiracy the defendant has done various acts and entered into various agreements which constitute violations of the anti-trust laws of Texas.

"The State further alleges that the defendant's predecessor, the Waters-Pierce Oil Company, incorporated in 1878, on or about the 5th day of October, 1894, entered into a contract with the Eagle Refining Company, A. W. Clem and certain other individuals named in its petition, by the terms of which defendant acquired the property of said Eagle Refining Company, situated in the city of Dallas, Texas, and the right to operate its business under the name of the said Eagle Refining Company. It further alleges that the defendant did, subsequent to May 31, 1900, operate said Eagle Refining Company and maintain the plant thereof at Dallas, as an apparently competing concern for various purposes prohibited by the anti-trust laws.

"The State further alleges that in the year 1896, the defendant's said predecessor bought out the business of the Texas Oil and Gasoline Company and of one Roy Campbell, who were at that time doing business in the city of San Antonio, Texas, and elsewhere, and entered into contracts and agreements with the said Texas Oil and Gasoline Company and Roy Campbell, whereby said Texas Oil and Gasoline Company was thereafter to be operated under said name by defendant as an apparently competing concern with defendant at San Antonio, in the sale of the products of petroleum. It further alleges that said Texas Oil and Gasoline Company was operated by defendant as a concern apparently competing with it at San Antonio subsequent to May 31, 1900, for various purposes in violation of the anti-trust laws of the State. For full particulars of the State's allegations you are referred to its second amended original petition.

"The defendant denies all and singular the allegations of the State, and in addition to various other special defenses, pleads specially that, if it has entered into any of the agreements or committed any of the acts alleged by the State, none of same constitute violations of the anti-trust laws of Texas, because said agreements were made and said acts done (if at all) solely with reference to subjects of interstate commerce. For full particulars of defendant's allegations, you are referred to its third amended original answer.

"As the law of the case you are instructed as follows, viz.:

"I.—The burden of proof rests upon the State to establish the affirmative of the issues which will hereafter be submitted in this charge for your consideration by a preponderance of the evidence, and you will find in favor of the defendant on each issue so submitted for your consideration, except such issue or issues, if any, as you find that the State has established by a preponderance of the evidence, and you will return a general verdict for the defendant, unless you find that the State has established by a preponderance of the evidence some combination or combinations of facts which will entitle it to recover under the law as it is given you in charge by the court.

"II.—The statute known as the anti-trust law of 1899 was in force on May 31, 1900, and thereafter remained continuously in force until March 31, 1903.

"For the purposes of this charge you are instructed that this Act made it unlawful for any corporation transacting or conducting any kind of business in this State to enter into, or become a party to, any agreement or understanding with any other corporation or individual to fix or regulate the price in Texas of any article of manufacture or merchandise or to control or limit in Texas the trade in any article of manufacture or merchandise.

"You are further instructed that said statute also made it unlawful for any corporation transacting or conducting any kind of business in this State to bring about or permit any union or combination of its capital, property, trade or acts with the capital, property, trade or acts of any other person or corporation, whereby the price in Texas of any article of manufacture or merchandise would be fixed, or sought to be fixed, regulated or sought to be regulated; or whereby the price in Texas of any article of manufacture or merchandise would be reasonably calculated to be fixed or regulated, or whereby the trade in such article of manufacture or merchandise in Texas would be sought to be controlled or limited, or would be reasonably calculated to be controlled or limited.

"The statute known as the anti-trust law of 1903, became effective on March 31, 1903, and has since continued in force. For the purposes of this charge you are instructed that this statute defines a trust to be a combination of capital, skill or acts, by two or more persons, firms, corporations or associations of persons, or either two or more of them, for either, any or all of the following purposes, viz.:

"1.—To create or which may tend to create or carry out restrictions in trade or commerce in Texas, or to create or carry out restrictions in the free pursuit in Texas of any business authorized or permitted by the laws of this State.

"2.—To fix, maintain or increase the price of merchandise in Texas.

"3.—To prevent or lessen competition in Texas in the sale of merchandise.

"4.—To abstain from engaging in business or in the sale of merchandise in Texas, or any portion thereof.

"Said statute of 1903 further defines a monopoly to be a combi-

nation or consolidation of two or more corporations when effected in any of the following methods, viz.:

"1.—When the direction of the affairs of two or more corporations is in any manner brought under the same management or control for the purpose of producing, or where such common management or control tends to create, a trust as above defined.

"2.—When any corporation acquires the shares or certificates of stock, franchise or other rights, or the physical properties or any part thereof of any other corporation for the purpose of preventing or lessening, or where the effect of such acquisition tends to affect or lessen competition, whether such acquisition is accomplished directly or through the instrumentality of trustees or otherwise.

"III.—Oil, all other products of petroleum, and goods, wares or merchandise of any character which the defendant or its agents may have purchased or acquired in any manner outside of the State of Texas and caused to be transported to its agents or others within the State, are the subjects of interstate commerce when they enter this State, and so remain until such commodities are removed from the original tanks, vessels or other packages in which they are imported into the State and become mixed with the common mass of property of similar character in this State. The anti-trust laws of Texas have no reference to agreements or pools or arrangements of any character concerning subjects of interstate commerce, and no agreement, pool or other arrangement, if any, which the defendant may have entered into with reference to the sale of any subject of interstate commerce can be considered by you as violating any anti-trust law of Texas. But neither oil purchased by the defendant from the Corsicana Refinery or elsewhere in Texas, nor other merchandise purchased by defendant at points in Texas, nor such oil or other merchandise purchased by defendant at points outside the State and transported into the State and removed from the original packages or vessels in which it was brought into the State and mingled with other property of similar character in the State, is the subject of interstate commerce, but on the contrary is the subject of local commerce, and any agreement or pool or arrangement entered into by defendant with reference to such property or the sale thereof, if any such sale there were, would be unlawful, if in violation of the anti-trust laws of this State.

"IV.—A corporation such as defendant can only act through its agents and servants, but such a corporation is not liable for all of the acts of its agents or servants. It is liable, however, for the acts done in the scope of their employment and agency, and is also liable for the acts of its agents which it has authorized such agents to perform, and it is also liable for the unauthorized acts of its agents, if any, which have been knowingly acquiesced in or ratified by the governing body of said corporation.

"V.—Much evidence has been introduced before you relating to the doings and agreements of the agents of corporations other than defendant, and to the doings and agreements of defendant's predecessor's agents prior to June 1, 1900, and to the doings and agreements of defendant's agents, and the agents of other corporations,

outside the State of Texas, and to the doings and agreements of individuals both prior and subsequent to June 1, 1900, and both outside and within the State of Texas. None of this evidence is competent or can be considered by you against the defendant, except within the limitations and for the purposes hereinafter stated, viz.:

"If you find from a preponderance of the other evidence in the case, independent of all declarations or statements made by any person or persons, except their evidence given while testifying by deposition or personally as witnesses on the trial of this case, that on June 1, 1900, there was formed or existed an agreement between the governing officers of defendant and the governing officers of any of the other corporations alleged in the State's petition to be co-conspirators with defendant relating to the management of defendant's business, or between the governing officers of defendant and any of the individuals alleged in the State's petition to be co-conspirators with defendant relating to the management of defendant's business, then you may consider for what, if anything, you think it worth, such acts or declarations of all the parties to said agreement, if any, and such acts and declarations of their authorized agents, if any, as were done or made, as the case may be, during the existence of said agreement, if any, and in furtherance of its execution, for the purpose of determining the character of said agreement, and whether or not it contemplated a violation by defendant of the anti-trust laws of Texas.

"You may further consider for what, if anything, you think it worth as tending to show or explain the course of defendant's dealing in Texas, said evidence, if any, of what it did through its duly appointed and authorized agents, if any, outside the State.

"None of said evidence can be considered by you against the defendant for any other purpose whatsoever, and none of it can be so considered by you against the defendant for said purposes, except such of it, if any, as you think proper to be considered when tested by the rules above stated relating to its competency.

"VI.—No agreement made by the defendant outside the State of Texas, to violate the anti-trust laws of Texas, if any such there were, can be made the basis for forfeiting its permit to do business in Texas, or for imposing penalties upon it, unless such agreement was executed or attempted to be executed in Texas by the duly authorized agents of defendant; but inasmuch as the undisputed evidence in the case shows that the defendant has continuously maintained its agents in this State and prosecuted its business therein since May 31, 1900, you will be authorized to convict it of violating the anti-trust laws of Texas, if you find from a preponderance of the evidence in favor of the State on the issues submitted for your consideration in paragraphs VII, VIII, IX, X or XI of this charge.

"VII.—If you find from a preponderance of the evidence that the defendant company, acting through its duly appointed and authorized agents, entered into or became a party to an agreement or understanding with the Standard Oil Company of New Jersey, on June 1, 1900, to fix or regulate the price in Texas of oil refined from

petroleum, and if you further find from a preponderance of the evidence that the defendant company remained or continued to be a party to said agreement or understanding, if any, and persisted in carrying same out in Texas, if any, through its duly authorized agents on June 1, 1900, or on any other date or dates subsequent to June 1, 1900, and prior to March 31, 1903, and if you further find from a preponderance of the evidence that the oil with reference to which said agreement or understanding, if any, was so made and carried out, was the subject of local as distinguished from interstate commerce, you will return a verdict for the State and say by your verdict, we, the jury, find for the State on the issues submitted for our consideration in paragraph seven of the court's charge. You are instructed in this connection that if you find in favor of the State on the issue above submitted for your consideration in this paragraph of the charge, each day embraced between May 31, 1900, and March 31, 1903, during which the defendant remained a party to the agreement or understanding herein mentioned, if there were any such agreement or understanding, and if it remained a party to same on any of said days, would constitute a separate and distinct violation of the anti-trust laws of Texas. ·

"If you do not find from a preponderance of the evidence that the defendant was on June 1, 1900, or on some date subsequent thereto and prior to March 31, 1903, through the action of its duly appointed and authorized agents, a party to an agreement or understanding with the Standard Oil Company of New Jersey to fix or regulate the price in Texas of oil refined from petroleum, and if you do not further find from a preponderance of the evidence that the oil with reference to which defendant entered into said agreement or understanding, if any such there were, was the subject of local, as distinguished from interstate, commerce, you will say by your verdict, we, the jury, find for the defendant on the issues submitted for our consideration in paragraph seven of the court's charge.

"VIII.—If you find from a preponderance of the evidence that on June 1, 1900, or on any date subsequent thereto and prior to March 31, 1903, the defendant acting through its duly appointed and authorized agents, had brought about or permitted any combination or union of its capital with the capital of the Standard Oil Company of New Jersey, whereby the price in Texas of oil refined from petroleum, other than oil which was the subject of interstate as distinguished from local commerce, was sought to be fixed or regulated, or whereby the price in Texas of such oil would be reasonably calculated to be fixed or regulated (or whereby the trade in such oil in Texas was sought to be controlled or limited), you will return a verdict for the State and say by your verdict, we, the jury, find for the State on the issues submitted for our consideration in paragraph eight of the court's charge. In this connection, you are instructed that if the defendant became a party to a pool of the character mentioned in this paragraph of the charge, each day between May 31, 1900, and March 31, 1903, that it remained a party to such pool, if there were any such days, would

constitute a separate violation of the anti-trust laws of Texas. If you do not find from a preponderance of the evidence that on June 1, 1900, or that on some date subsequent thereto and prior to March 31, 1903, the defendant acting through its duly appointed and authorized agents had brought about or permitted a combination or union of its capital with the capital of the Standard Oil Company of New Jersey, and if you do not further find from a preponderance of the evidence that by said combination or union, if such there were, the price in Texas of oil refined from petroleum, other than oil which was the subject of interstate as distinguished from local commerce, was sought to be fixed or regulated, or that thereby the price in Texas of such oil was reasonably calculated to be fixed or regulated, or that thereby the trade in such oil in Texas was sought to be controlled or limited, you will say by your verdict, we, the jury, find for the defendant on the issues submitted for our consideration in paragraph eight of the court's charge.

"IX.—If you find from a preponderance of the evidence that the defendant, acting through its duly appointed and authorized agents, entered into a combination of its capital with the capital of the Standard Oil Company of New Jersey for the purpose of creating in Texas, or which tended to create in Texas, or carry out in Texas, restrictions in the free pursuit in this State of the business of selling oil refined from petroleum, other than oil which was the subject of interstate as distinguished from local commerce, or to fix, maintain or increase the price of such oil in Texas, or to prevent or lessen competition in Texas in the sale of such oil, and that the defendant remained or was a party to and acted under such combination, if such there were on March 31, 1903, or any date subsequent thereto and prior to April 29, 1907, you will return a verdict for the State and say by your verdict, we, the jury, find for the State on the issues submitted for our consideration in paragraph nine of the court's charge. In this connection you are instructed that if the defendant became a party to a trust of the character mentioned in this paragraph of the charge, each day between March 30, 1903, and April 29, 1907, that it remained a party to and acted under such trust, if there were any such days, would constitute a separate violation of the anti-trust laws of Texas.

"If you do not find from a preponderance of the evidence that the defendant, acting through its duly appointed and authorized agents, entered into a combination of its capital with the capital of the Standard Oil Company of New Jersey, for the purpose of creating in Texas, or which tended to create or carry out in Texas restrictions in the free pursuit in this State of the business of selling said character and kind of oil, or to fix, maintain or increase the price of such oil in Texas, or to prevent or lessen competition in Texas, in the sale of such oil, and that the defendant remained or was a party to, and acted under, such combination, if such there were subsequent to March 30, 1903, and prior to April 30, 1907, you will say by your verdict, we, the jury, find for the defendant on the issues submitted for our consideration in paragraph nine of the court's charge.

"X.—If you find from a preponderance of the evidence that the direction of the affairs of the defendant corporation and the affairs of the Standard Oil Company of New Jersey were under the same management or control on March 31, 1903, or on any date subsequent thereto and prior to April 29, 1907, and that they were placed under such common management or control, if any, by their respectively authorized officers, under such circumstances, that such common management or control, if such there were, created or tended to create or carry out restrictions in the sale in Texas of oil of the kind and character mentioned in the last preceding paragraph of this charge, or to fix, maintain or increase the price in Texas of such oil, or to prevent or lessen in Texas the competition in the sale of such oil, you will return a verdict for the State and say by your verdict, we, the jury, find for the State on the issues submitted for our consideration in paragraph ten of the court's charge. In this connection you are instructed that if the defendant entered into a monopoly of the character mentioned in this paragraph of the charge, each day between March 30, 1903, and April 29, 1907, that it remained a party to such monopoly, if there were any such days, constituted a separate violation of the anti-trust laws of Texas.

"If you do not find from a preponderance of the evidence that the direction of the affairs of the defendant corporation and the affairs of the Standard Oil Company of New Jersey were under the same management or control on March 31, 1903, or on some date subsequent thereto and prior to April 29, 1907, and that they were brought under such common management or control, if any, by their respectively authorized officers under such circumstances that such common management or control, if such there were, created or tended to create or carry out restrictions in the sale in Texas of such oil, or fix, maintain or increase the price in Texas of such oil, or to prevent or lessen in Texas the competition in the sale of such oil, you will say by your verdict, we, the jury, find for the defendant on the issues submitted for our consideration in paragraph ten of the court's charge.

"XI.—If you find from a preponderance of the evidence that the Standard Oil Company of New Jersey had on March 31, 1903, or on any date subsequent thereto and prior to April 29, 1907, acquired a majority of the capital stock of the defendant corporation and thereby effected a combination of said two corporations, and if you further find from a preponderance of the evidence that said stock was acquired and combination effected, if any, with the purpose and intention on part of the managing officers and directors of said Standard Oil Company of New Jersey of preventing or lessening the competition in the sale in Texas of the character and kind of oil above mentioned, or that the effect of said combination, if such there were, tended to affect or lessen the competition in the sale in Texas of said oil, you will return a verdict for the State and say by your verdict, we, the jury, find for the State on the issues submitted for our consideration in paragraph eleven of the court's charge. In this connection you are instructed that if the defendant entered into a monopoly of the character mentioned in this para-

graph of the charge, each day between March 30, 1903, and April 29, 1907, that it remained a party to such monopoly, if there were any such days, constituted a separate violation of the anti-trust laws of Texas.

"If you do not find from a preponderance of the evidence that the Standard Oil Company of New Jersey had on March 31, 1903, or on some date subsequent thereto and prior to April 29, 1907, acquired a majority of the capital stock of the defendant corporation, and if you do not further find from a preponderance of the evidence that said stock was acquired and combination effected, if it were at all, with the purpose and intention on the part of the managing officers and directors of said Standard Oil Company of New Jersey of preventing or lessening the competition in the sale in Texas of said character and kind of oil, or that the effect of said combination, if such there were, tended to affect or lessen the competition in the sale in Texas of said oil, you will say by your verdict, we, the jury, find in defendant's favor on the issues submitted for our consideration in paragraph eleven of the court's charge.

"XII.—The evidence introduced before you does not show with sufficient definiteness that the defendant has, since May 31, 1900, acted under or persisted in the performance of either the contract with Clem and the Eagle Refining Company and others, or the contract with Roy Campbell and the Texas Oil and Gasoline Company, in such a manner as to violate the anti-trust laws of 1899 or 1903. You are, therefore, instructed to find in defendant's favor on the issues pleaded by the State with reference to said contracts.

"XIII.—Evidence has been introduced before you tending to show that the defendant has given rebates and discounts in the course of its dealings; evidence has also been introduced before you tending to show that defendant has made contracts and entered into understandings other than those which have been submitted for your consideration in paragraphs seven to eleven, inclusive, of this charge. Evidence has also been introduced before you tending to show the general course of dealings of defendant in Texas and elsewhere, including some of its business methods in meeting competition. You are instructed that none of this evidence shows or tends to show any violation of the anti-trust laws of Texas, unless it tends in some degree to establish some one or more of the issues submitted for your consideration in the last above mentioned paragraphs of this charge; and you are therefore instructed to acquit the defendant and return a general verdict for it, notwithstanding any and all of said evidence, unless you find in favor of the State on the issues submitted for your consideration in some one or more of said paragraphs of the charge.

"XIV.—If you convict the defendant under the foregoing instructions of any violation or violations of the anti-trust law of 1899, you will specify in your verdict the date or days for which it is convicted of having violated said law, and will further specify in your verdict that for said violation or violations, if any you find, that its permit to do business in Texas shall be forfeited, and the amount of money which shall be adjudged against it as penalties

for said violations, if any. In fixing the penalties, if any, which you assess against the defendant for any violations of which you may convict it, of the anti-trust law of 1899, you will fix same at not less than two hundred dollars, or more than five hundred dollars per day for each day you find it has so violated the law. If you convict the defendant of any violations of the anti-trust law of 1903, you will specify in your verdict the date or days for which it is so convicted and further specify therein that as a result of said conviction, its permit to do business in Texas shall be forfeited, and the sum of money that shall be adjudged against it as a penalty for such violation, fixing said sum at fifty dollars per day for each and every day that you convict it of having violated said law.

"XV.—In order to aid you in preparing your verdict in proper form, when you have reached same, the following forms of verdicts are submitted for your consideration:

"1.—If you find in favor of the State on all of the issues submitted to you and for the entire time for which penalties are claimed by the State against the defendant in its petition, you will say: 'We, the jury, find for the plaintiff against the defendant on each of the issues submitted to us for each of the days between May 31, 1900, and March 31, 1903, being 1033 days, and for the penalties at ————— Dollars; and we find for the plaintiff against the defendant on each of the issues submitted for each of the days between April 1, 1903, and April 29, 1907, being fourteen hundred and eighty-eight days, and fix the penalties at Seventy-four Thousand Four Hundred Dollars. We further find that the permit of the defendant to do business in the State of Texas should be canceled. We find for the defendant upon all the issues made by the pleadings and not submitted in the charge of the court.'

"2.—If you find in favor of the State on some of the issues submitted for your consideration, relating to the alleged violation of the anti-trust law of 1899, and in favor of the State with reference to some of the alleged violations of the anti-trust law of 1903, you may use the following form of verdict:

"We, the jury, find in favor of the State on the issues submitted for our consideration in the following paragraphs of the court's charge ——————.

"We further find that the defendant violated the anti-trust laws of Texas on the following days embraced between May 31, 1900, and March 31, 1903 ——————.

"We further find that on account of said violations, the permit of the defendant to do business in Texas should be forfeited, and that penalties should be imposed upon it in the amount of ——— Dollars. We further find that the defendant violated the anti-trust laws of 1903, on the following days embraced between the 30th day of March, 1903, and the 29th day of April, 1907 ——————.

"We further find that on account of said violations the permit of the defendant to do business in Texas should be forfeited, and that penalties should be imposed upon it in the amount of ——— Dollars. On all other issues raised by the pleadings, we find in favor of the defendant.

"3.—If you find in favor of the State with reference to some or all of the alleged violations of the anti-trust law of 1899, submitted for your consideration, and if you find in favor of the defendant on other of said alleged violations, and if you find in favor of the defendant on the issue of all of the alleged violations of the anti-trust law of 1903, you may use the following form of verdict:

"We, the jury find in favor of the State on the issues submitted for our consideration in the following paragraph of the court's charge ——————. We further find that the defendant has violated the anti-trust laws of Texas on each of the following days embraced between May 31, 1900, and March 31, 1903 ——————; we further find that because of said violations the permit of the defendant to do business in Texas should be forfeited and penalties should be imposed upon it in the amount of —————— Dollars. We further find in defendant's favor on all alleged violations of the anti-trust laws of 1903, and on all other issues made by the pleadings.

"If you find in defendant's favor on all issues submitted for your consideration relating to its alleged violation of the anti-trust laws of 1899, but find in favor of the State on all or some of the issues relating to defendant's alleged violation of the anti-trust law of 1903, you may use the following form of verdict: "We, the jury, find in defendant's favor on all issues submitted for our consideration relating to its alleged violation of the anti-trust laws of 1899, but find in favor of the State under the following paragraphs of the court's charge: ——————, for alleged violations of the anti-trust laws of 1903. We further find that the defendant has violated said anti-trust laws on each of the following days embraced between March 30, 1903, and April 29, 1907, ——————. We further find that on account of said violations the permit of the defendant to do business in Texas should be forfeited, and that penalties should be imposed upon it in the sum of —————— Dollars.

"5.—If you desire to return a general verdict for defendant you may use the following form of verdict: We, the jury, find for the defendant.

"XVI.—You are the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given to their testimony; but you are bound to take the law as it is given you in charge by the court, and to be governed thereby in arriving at your verdict."

All requested instructions were refused. The verdict of the jury reads as follows:

"We the jury, find for the plaintiff against the defendant on each of the issues submitted to us for each of the days between May 31, 1900, and March 31, 1903, being 1033 days, and for penalties 1,549,500.00 dollars.

"And we find for the plaintiff against the defendant on each of the issues submitted for each of the days between April 1, 1903, and April 29, 1907, being fourteen hundred and eighty-eight days, and fix the penalties at seventy-four thousand four hundred dollars.

Vol. XLVIII. Civil—12.

"We further find that the permit of the defendant to do business in the State of Texas should be canceled.

"We find for the defendant upon all issues made by the pleadings and not submitted in the charge of the court."

The court rendered judgment for the State in accordance with the verdict for $1,623,900, and a cancellation of the defendant's permit to do business in this State. The defendant has appealed and presents the case in this Court on one hundred and twenty-nine assignments of error.

There is evidence in the record which supports the findings of the jury, and we find the facts to be as found by the verdict.

*Opinion.*—1.—Assisted by elaborate briefs and arguments submitted by able counsel on both sides, this court has given to this important case earnest and careful consideration. The volume of business on our docket and the great number of questions presented preclude extended consideration in this opinion of many of the questions raised in appellant's brief. We therefore announce, in general terms, our conclusion to the effect that it is not shown that error was committed in overruling appellant's application for a change of venue, in various rulings upon exceptions to pleadings, and as to admissibility of testimony.

A majority of the court also hold that no positive error has been assigned upon the charge of the court. The writer of this opinion is of a different view concerning the 11th section of the charge, and concurs with counsel for appellant in their contention that it was calculated to mislead the jury into the belief that they could find against the defendant upon the issue therein submitted, regardless of whether it had any knowledge of, participated with, or aided or abetted the Standard Oil Company in the wrongful conduct therein referred to. The provision of the anti-trust statute of March 31, 1903, upon which the charge in question was evidently founded, seems to be addressed, in the main, against the corporation which acquires stock or other property of another corporation with the intention of using it for the purpose specified in the statute, and it can not properly be construed to include the corporation whose stock or property has been acquired, and subject it to the penalties prescribed by the statute, unless that corporation is, in some manner, responsible for the unlawful acts of the acquiring corporation.

These are my individual views, and the other members of the court do not concur in the construction placed by me upon the charge. However, we are all agreed that if the charge in question be erroneous, it affords no ground for reversal, because the jury found that appellant had violated other provisions of the anti-trust Act of 1903, and awarded only one penalty for each day's violation. Having found for the State on these other issues, if the verdict had been in appellant's favor on the issue submitted by the charge under consideration, the judgment should have been the same; and therefore if that section of the charge was erroneous, such error is now harmless and immaterial.

In reference to the assignments of error complaining of the order

of the court appointing a receiver, it is sufficient to say that appellant has exercised its right to prosecute a separate appeal from that order, and this court, in considering that appeal, has decided against appellant. It is not entitled to have the order appointing a receiver reviewed by this court twice or in two distinct proceedings.

2.—The constitutionality and validity of the anti-trust Acts of May 25, 1899, and March 31, 1903, have been vigorously assailed in numerous respects. We overrule these objections and hold that these statutes authorize and sustain this suit. (State v. Laredo Ice Company, 96 Texas, 467; Waters-Pierce Oil Co. v. The State, 44 S. W. Rep., 936.)

The contention that these statutes are too indefinite and uncertain in the particulars involved in this case is not regarded as tenable. The Sherman Anti-trust Law enacted by Congress is not more definite and specific than these statutes, and that law has stood the test against similar objections in the Supreme Court of the United States. (United States v. Knight Company, 156 U. S., 1; United States v. Trans-Missouri Freight Ass'n, 166 U. S., 291; United States v. Joint Traffic Ass'n, 171 U. S., 505; Hopkins v. United States, 171 U. S., 578; Anderson v. United States, 171 U. S., 604; Addyston Pipe & Steel Co. v. United States, 175 U. S., 211; Montague & Co. v. Lowry, 193 U. S., 38; Northern Securities Company v. United States, 193 U. S., 196.)

3.—This suit was instituted on September 22, 1906, and the defendant interposed a special exception to the petition insofar as it sought to recover penalties for alleged violation of the anti-trust laws of this State prior to the 22d day of September, 1904, for the reason that it appeared from the face of the plaintiff's petition that the right to recover such penalties accrued more than two years before the suit was filed; and was therefore barred by the statute of limitation of two years, as prescribed in article 219 of the Code of Criminal Procedure of this State. That exception was overruled, and the court refused to give the jury a special instruction, requested by appellant, announcing and applying the same proposition of law. These rulings of the trial court are assigned as error, and present one of the most important questions in the case. Chapter 1 of title 4 of the Code of Criminal Procedure is headed thus: "The time within which criminal actions may be commenced:" Article 219 reads as follows: "For all misdemeanors an indictment or information may be presented within two years from the commission of the offense and not afterward."

By the Penal Code offenses which are punishable by pecuniary fine only are designated misdemeanors; and appellant's contention seems to be that the things condemned by the Act of May 25, 1899, upon which this suit in part is based, constitute misdemeanors; and that, although civil in form, the suit is criminal in nature and barred by article 219 of the Code of Criminal Procedure. It is also contended that the pecuniary penalties imposed by the Act of March 31, 1903, constitute part of the punishment prescribed by that Act, and that the suit for the penalties accruing thereunder constitutes

a criminal case, and is barred by article 218 of the Code of Criminal Procedure, which bars prosecutions for felonies.

The second, third, fourth and sixth sections of the Act of May 25, 1899, declare that all persons, firms, corporations or associations of persons who violate those sections "shall be deemed and adjudged guilty of a conspiracy to defraud, and shall be subject to the penalties prescribed in this Act." The 11th section states that all who do the things therein condemned shall be "adjudged a monopoly and be subject to all the pains and penalties provided in this Act." The seventh section provides for the forfeiture of the charter of any domestic corporation and permit to do business granted to any foreign corporation for violations of the, statute. The 5th section reads as follows: "Any person, partnership, firm or association, or any representative or agent thereof, or any corporation or company, or any officer, representative or agent thereof, violating any of the provisions of this Act shall forfeit not less than two hundred dollars nor more than five thousand dollars for every such offense, and each day such person, corporation, partnership or association shall continue to do so shall be a separate offense, the penalties in such cases to be recovered by an action in the name of the State at the relation of the Attorney-General or the district or county attorney; the moneys thus collected to go into the State treasury, and to become a part of the general fund, except as hereinafter provided."

The pertinent part of the 9th section is expressed in these words: "It shall be the duty of the Attorney-General and the prosecuting attorney of each district or county, respectively, to enforce the provisions of this Act. The Attorney-General and the prosecuting attorney shall institute and conduct all suits begun in the District Courts, and upon appeal the Attorney-General shall prosecute said suits in the Courts of Civil Appeals and Supreme Court."

The first section of the anti-trust Act of March 31, 1903, defines a trust. The second section defines a monopoly, and the third section prescribes what acts shall constitute a conspiracy in restraint of trade. The fourth section declares all trusts, monopolies and conspiracies in restraint of trade to be illegal. The 5th, 6th and 7th sections make provision for the forfeiture of charters of domestic corporations violating that Act, and the 8th section makes a similar provision in reference to the permit of foreign corporations to do business in this State. The 7th and 10th sections use the word "convicted," but the 7th relates to the subject of the forfeiture of charter rights, and the tenth to the subject of forfeiture of a foreign corporation's right to do business in the State, which shows that the Legislature did not have in mind a proceeding by indictment or criminal information. The 11th section reads as follows:

"Each and every firm, person, corporation or association of persons who shall in any manner violate any of the provisions of this Act shall for each and every day that such violation shall be committed or continued, forfeit and pay the sum of fifty dollars, which may be recovered in the name of the State of Texas in any county where the offense is committed or where either of the offenders reside, or in Travis County, and it shall be the duty of the Attorney-General, or

the district or county attorney, under the direction of the Attorney-General, to prosecute for the recovery of the same, and the fees of the prosecuting attorney for representing the State in proceedings under this Act shall be over and above the fees allowed him under the general fee bill."

The 13th section of that Act reads as follows: "And in addition to the penalties and forfeitures herein provided for, every person violating this Act may further be punished by imprisonment in the penitentiary not less than one nor more than ten years."

We agree with counsel for appellant that these statutes are penal. They were enacted for the purpose of suppressing and preventing certain things regarded by the Legislature as detrimental to the public interest. The penalties prescribed were intended as punishment, but it does not follow that this is a criminal case within the purview of article 219 of the Code of Criminal Procedure. After a careful consideration of all their terms, we have reached the conclusion that it was the intention of the Legislature in enacting the two statutes under consideration to create a cause of action in behalf of the State for the pecuniary penalties therein prescribed, to be recovered in a civil suit.

We reach this conclusion mainly from the language of the 5th section of the Act of 1899, and the 11th section of the Act of 1903. These sections declare that those who violate any of the provisions of those Acts shall forfeit and pay, in the one instance not less than $200 nor more than $5000, and in the other instance $50, to be recovered in an action in the name of the State. It is true that in some places in these laws the procedure is designated "prosecutions," but in others they are spoken of as "actions" and "suits." In the 9th section of the Act of 1899, it is declared to be the duty of the Attorney-General and district and county attorneys "to institute and conduct all *suits* begun in the District Courts, and upon appeal the Attorney-General shall prosecute said *suits* in the Courts of Civil Appeals and Supreme Court."

Section 5 of that Act, construed in connection with section 9, indicates with absolute certainty a legislative purpose to authorize civil suits for the recovery of the pecuniary penalties prescribed. The two sections together indicate that it was not intended that such penalties should be enforced by a criminal proceeding, because if that act creates a criminal offense such offense would be a misdemeanor, of which the District Court would have no jurisdiction. The Constitution confers upon that court exclusive jurisdiction of suits by the State for forfeitures and penalties, and it must be presumed that in enacting that statute, the Legislature intended to provide for such suits as were authorized by that provision of the Constitution, and not to create criminal offenses of which the County Court alone would have original jurisdiction, otherwise the Legislature would not have used the language, "shall institute and conduct all suits begun in the District Courts."

It is true that both of these statutes contain some expressions common to criminal procedure, such as "offense," "guilty" and "convicted." The word "guilty," however, is frequently used in civil cases,

as "guilty of fraud," "guilty of negligence." And the word "offense," as used in these statutes, has reference to violations of their provisions, and is not equivalent to the words "felony" or "misdemeanor." However, we do not hold that it is necessary to use either of the latter terms to create a criminal offense; nor, on the other hand, do we think that the words "offense," "guilty" and "convicted" necessarily determine that these are criminal statutes to be enforced exclusively by indictment or information. The word "suit" is very generally used to designate a civil case, and seldom if ever applied to criminal cases.

As these statutes do not, in terms, require a resort to criminal procedure for their enforcement, then, even if they do not direct any method of enforcement, we are of the opinion that the State had the right to proceed in a civil action for a recovery of the pecuniary penalties. In such cases it is a well established rule that an action of debt will lie for the recovery of statutory penalties. (5 Ency. Plead. & Prac., 907, and authorities there cited.) It has been so decided in this State in Davidson v. Missouri Pacific Ry. Co., 3 Texas App. Civ., 173, where it was held that a suit to recover a statutory penalty was an action of debt, and barred by our statute of limitation, which requires actions for debt, where the indebtedness is not evidenced by a contract in writing, to be commenced within two years. That the State may also bring an action for debt for the recovery of statutory penalties seems to be equally well settled. It was so held by the Supreme Court of the United States in Stockwell v. United States, 13 Wall., 531. That was an action by the government to recover double the value of certain shingles, alleged to have been illegally imported into the United States. The Act of Congress upon which the suit was founded reads as follows: "That if any person or persons shall receive, conceal or buy any goods, wares or merchandise, knowing them to have been illegally imported into the United States, and liable to seizure by virtue of any act in relation to the revenue, such person or persons shall, on conviction thereof, forfeit and pay a sum double the amount or value of the goods, wares or merchandise so received, concealed or purchased." In that case, among other things, the court said:

"A verdict and judgment having been recovered against the defendants in the court below, the record has been removed into this court and four errors have been assigned.

"The first is that a civil action of debt will not lie, at the suit of the United States, to recover the forfeitures or penalties incurred under this Act of Congress, and that the court below erred in holding that such an action might be maintained. It is not contended that an action of debt will not lie to recover duties, if the defendant be the owner or importer of the goods imported, for it is conceded that by the act of importing, an obligation to pay the duties is incurred. The obligation springs out of the statutes which impose duties. Nor is it doubted that when a statute gives a private person a right to recover a penalty for a violation of law he may maintain an action of debt, but it is insisted that when the government proceeds for a penalty based on an offense against law, it must be by indictment or by information. No authority has been adduced in support of this

position, and it is believed that none exists. It can not be that whether an action of debt is maintainable or not depends upon the question who is the plaintiff. Debt lies whenever a sum certain is due to the plaintiff, or a sum which can readily be reduced to a certainty—a sum requiring no future valuation to settle its amount. It is not necessarily founded upon contract. It is immaterial in what manner the obligation was incurred, or by what it is evidenced, if the sum owing is capable of being definitely ascertained. The Act of 1823 (3 Stat. at L., 781), fixes the amount of the liability at double the value of the goods received, concealed or purchased, and the only party injured by the illegal acts, which subject the perpetrators to the liability is the United States. It would seem, therefore, that whether the liability incurred is to be regarded as a penalty or as liquidated damages for an injury done to the United States, it is a debt, and as such it must be recoverable in a civil action.

"But all doubts respecting the matter are set at rest by the fourth section of the Act, which enacted that all penalties and forfeitures incurred by force thereof shall be sued for, recovered, distributed and accounted for in the manner prescribed by the Act of March 2, 1799 (1 Stat. at L., 627), entitled 'An Act to regulate the collection of duties on Imports and Tonnage.' By referring to the 89th section of that Act, it will be seen that it directs all penalties accruing by any breach of the Act, to be sued for and recovered, with costs of suit, in the name of the United States of America, in any court competent to try the same; and the collector within whose district a forfeiture shall have been incurred, is enjoined to cause suits for the same to be commenced without delay. This manifestly contemplates civil actions, as does the proviso to the same section, which declares that no action or prosecution shall be maintained in any case under the Act, unless the same shall have been commenced within three years after the penalty or forfeiture was incurred. Accordingly, it has been frequently ruled that debt will lie at the suit of the United States, to recover the penalties and forfeitures imposed by statutes. United States v. Colt. Pet. (C. C.), 145; Jacob v. United States, 1 Brock, 520; United States v. Bougher, 6 McLean, 277; Walsh v. United States, 3 Wood. & M., 342; United States v. Lyman, 1 Mas., 482; United States v. Allen, 4 Day, 474. It is true that the statute of 1823 imposes the forfeiture and liability to pay double the value of the goods received, concealed or purchased with knowledge that they had been illegally imported, 'on conviction thereof.' It may be, therefore, that an indictment or information might be sustained. But the question now is whether a civil action can be brought, and, in view of the provision that all penalties and forfeitures incurred by force of the Act shall 'be sued for and recovered,' as prescribed by the Act of 1799, we are of the opinion that debt is maintainable. The expression 'sued for and recovered' is primarily applicable to civil actions, and not to those of a criminal nature."

As to the point made in reference to the penalties being indefinite under the Act of 1899, in addition to the case just cited, we refer to Rockwell v. State, 11 Ohio, 130, where the law fixed the penalty at not less than $5 nor more than $50, and the objection referred

to was overruled, and it was held that an action of debt would lie. Other courts have held that statutes somewhat similar to those under consideration confer upon the State a cause of action to be maintained in a civil suit. (Burgh v. State, 108 Ind., 133; Davis, Admr., v. State, 119 Ind., 555; State v. Grove, 77 Wis., 448; Territory of New Mexico v. Baca, 2 New Mex., 183.) Interesting discussions of the terms "fines," "forfeitures" and "penalties" will also be found in People v. Nedrow, 122 Ill., 363; Gosselink v. Campbell, 4 Iowa, 300.

Our conclusion is that the statutes under consideration vest in the State a civil right of action for the pecuniary penalties prescribed for violations of the provisions of those statutes. This being true, and as our statute of limitations applicable to civil cases does not include and bar the State, we hold that limitation is not available as a defense in this case. We do not rest this ruling upon the ground that the statutes under consideration do not create criminal offenses. If it be conceded that they create such offenses, criminal prosecutions for which would be barred within two years, it does not follow that the penalties which might have been recovered by such prosecutions can not, when authorized, be recovered in a civil action. Our Penal Code and Code of Criminal Procedure deal exclusively with criminal cases, and that portion of the latter which deals with the subject of limitation only purports to fix the time within which criminal actions may be commenced; and article 219, relied on by appellant, merely forbids prosecutions by indictment or information after two years from the commission of the offense.

It is argued on behalf of appellant that, even though a statute creating an offense may confer upon the State the right to maintain a civil action to recover a pecuniary penalty for violating the statute, still that right would be barred by article 219, which would bar the right to enforce the penalty by indictment or information. If article 219, or any other statute, declared that no right of action should exist or no sort of proceeding be instituted for the collection of a penalty after two years, appellant's contention would be correct; but that article is much narrower in its scope and merely prohibits prosecutions in the manner and by the means prescribed for the prosecution of criminal cases. It may be true that the same general result would be sought in the one case as in the other, viz.: recovery of the penalty, and if that were the only thing to be considered, there would be force in the argument that in prohibiting criminal prosecutions after a specified time the Legislature intended thereby to prevent any other character of procedure which had for its purpose the accomplishment of the same general result. If the two proceedings, civil and criminal, were not so essentially different the contention urged might be sustained; but the statutes under consideration apply to natural persons as well as corporations, and as to such persons, civil and criminal proceedings are widely different. In a civil action against an individual to recover a penalty he is notified of the suit by delivering to him a citation. When the case is tried, if he loses, the only result is a personal judgment against him for a specified sum of money to be collected by execution and not otherwise. But if he is proceeded against criminally for the enforcement of a penalty he is arrested

and required to give bond or stay in jail until after the case is tried. Upon trial, if he is convicted, the judgment not only goes against him for the penalty, but unless he pays it, he is again incarcerated in jail. Thus it will be seen that in a criminal proceeding to enforce the penalty the defendant would necessarily be subjected to the ignominy of an arrest by a public officer, and, upon contingencies which often occur, would be incarcerated in jail. Now, when the Legislature prescribed a time which would prevent a prosecution fraught with these serious consequences, does it necessarily follow that it intended to cut off any right the State might have to obtain a personal judgment for a pecuniary penalty, without resorting to a procedure that would bring about any such harsh results? We think not. In prescribing limitation for criminal proceedings we believe the Legislature had in mind cases criminal, both in substance and form, and had no intention of affecting any right the State might assert in a civil action.

Chief Justice Marshall, in Adams v. Woods, 2 Cranch, 337, announced that if a law should merely declare that no indictment or information should be presented after a specified time, such law would be pleadable only in bar of indictments or informations, and would not bar a civil action for a recovery of the penalty prescribed for violating a statute.

An offense which is punishable by imprisonment in the penitentiary absolutely or in the alternative, is a felony; and as the anti-trust Act of 1903 fixes confinement in the penitentiary as an alternative punishment, appellant pleaded article 218 of the Code of Criminal Procedure in bar of the State's right to recover part of the penalties sued for under that Act. Article 218 is framed like article 219, and would apply to a criminal prosecution based upon the Act of 1903 and bar such prosecution after three years. As we hold that it was the intention of the Legislature to confer upon the State the right to maintain a civil action for the pecuniary penalties therein prescribed, we hold that such right of action is not barred by article 218. In other words, while the penalties referred to were intended, in a certain sense, as punishment, they were not imposed as punishment to be inflicted through the onerous instrumentalities of a criminal prosecution.

Appellant also pleaded the statute of limitation of two and four years embodied in the Revised Statutes and applicable to civil cases. It is contended that the two years statute has application upon the theory that if the State's suit is an action of debt, and not instituted for the preservation of the public rights, revenues or property, then the State should not be exempt from limitation, but should be treated as any other litigant. It is the rule of the common law of England that unless so expressly enacted, limitation does not run against the sovereign, and that is the rule in the American States. We are not prepared to place upon that rule the restriction urged, but if we should do so it would not be proper to apply it to this case. In seeking to recover the penalties here involved, the State is endeavoring to enforce statutes enacted for the protection of the public interest. One of the main objects of the suit is to protect and preserve public rights and promote a well established public policy.

In view of what we have already said it is hardly necessary to add that we regard the four years statute of limitation as equally unavailing. In Brown v. Sneed, 77 Texas, 471, which holds that limitation does not apply to the State unless so expressly provided, the authorities are collated and reviewed. We also hold that no error was committed in refusing a charge to the effect that the State must prove its case beyond reasonable doubt. Being a civil case, the rule does not apply.

4.—It is contended on behalf of appellant that the anti-trust Act of May 25, 1899, was rendered unconstitutional by the passage of another statute at the same session of the Legislature entitled "An Act to protect workingmen in the right of organization and the purposes thereof," approved May 27, 1899, wherein it was provided that from and after its passage it should be lawful for any and all persons engaged in any kind of work or labor, manual or mental, or both, to associate themselves together and form trades unions and other organizations for the purpose of protecting themselves in their personal work, personal labor and personal service in their respective pursuits and employments. By the third section it is declared that that Act shall not apply to combinations or associations of capital or capital and persons natural or artificial, formed for the purpose of limiting the production or consumption of labor's products, or for any other purpose in restraint of trade, and that nothing therein contained shall be held to interfere with the terms and conditions of private contracts with regard to the time of service or other stipulations between employers and employes, and "that nothing herein contained shall be construed to repeal, affect or diminish the force and effect of any statute now existing on the subject of trusts, conspiracies against trade, pools and monopolies." In view of these limitations placed upon that act, we are of the opinion that it was not the intention of the Legislature to authorize anything to be done that was prohibited by the Act of May 25, 1899. Hence, we hold that this statute engrafts no exemptions upon the anti-trust statute referred to.

5.—The anti-trust statute of May 25, 1899, having been superseded and repealed by the Act of March 31, 1903, which diminished the pecuniary penalties, appellant sought to have the latter statute applied to the time before as well as after it went into effect. This was refused, and we think properly so, on account of this proviso in the latter Act: "provided nothing in this Act shall be held or construed to affect or destroy any rights of the State of Texas to recover penalties or forfeit charters of domestic corporations, or prohibit foreign corporations from doing business in this State, for acts committed before this Act took effect." We are of opinion that this proviso preserved whatever rights the State had under the former law, including the right to enforce the penalties prescribed by that Act. We are unable to concur in the proposition that it was merely intended to preserve the right to, but not the amount of, the penalties. Nor can we sanction the proposition that because of the location of a comma in the proviso quoted, it was the intention of the Legislature to protect and preserve the right of the State to recover penalties from domestic corporations and not preserve such right as against

foreign corporations. No reason existing for making such a marked discrimination, we are not willing to hold that it was the intention of the Legislature to do so, merely because a comma was so used as to render that construction plausible. In construing written laws courts are not bound by rules of grammar, and may disregard them in order to give effect to manifest legislative intention.

6.—It is claimed that the trial court should have granted appellant's motion for a new trial based upon the ground that the judgment imposes excessive fines, and operates as a deprivation of property without due process of law. It is also contended that the Act of 1899 should be declared void, because it authorizes excessive fines and forfeitures. That question has already been decided against appellant's contention in State v. Laredo Ice Co., 96 Texas, 467. The verdict, while large, is much under the maximum permitted by the law. Its magnitude is mainly attributable to appellant's repeated and long-continued violations of the law, covering a period of six years. Hence, we have reached the conclusion that the verdict is not so large as to render it manifest that the jury were actuated by prejudice or other improper motives.

7.—In appellant's motion for a new trial in the court below, and in its presentation of the case here, the verdict of the jury has been challenged, the contention being that the testimony fails to show that appellant has violated any of the anti-trust laws of this State. The evidence is very voluminous, and it is not necessary that it be set out or epitomized in this opinion. It is sufficient, we think, to show that from the date of its permit to do business in this State, May 31, 1900, appellant has been a party to an agreement or understanding with the Standard Oil Company of New Jersey, one object of which was to create a monopoly and control the price of petroleum oil and prevent competition in its sale in a large and specified territory, including the State of Texas; and that, to a large extent, such object has been accomplished. Insofar as that agreement related to this State, appellant, acting by its agents, performed it within this State; and such performance within the limits of the State constitutes violations of Texas laws and renders appellant amenable to such laws, although the agreement between it and the Standard Oil Company may not have been made in this State. To a large extent the case rests upon circumstantial evidence; but we can not say that the jury were not warranted in the conclusions drawn from it. Hence, we hold that the verdict is supported by testimony, and no error was committed in overruling the motion for a new trial.

Upon the whole case our conclusion is that reversible error has not been shown, and therefore the judgment will be affirmed.

*Affirmed.*

Writ of error refused.